STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. MANUEL E. GONZALEZ, DEFENDANT–RESPONDENT.

Argued April 5, 1989—Decided April 24, 1989.

594

*James J. Gerrow, Jr.,* Deputy First Assistant Prosecutor, argued the cause for appellant (*Stephen G. Raymond,* Burlington County Prosecutor, attorney; *James J. Gerrow* and *Deborah A. Siegrist,* Assistant Prosecutor, on the brief).

*Jerome A. Sweeney* argued the cause for respondent (*Sweeney & Yetman,* attorneys).

*Carol M. Henderson,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Peter N. Perretti, Jr.,* Attorney General, attorney).

*Emerson L. Darnell* submitted a brief on behalf of *amicus curiae* American Civil Liberties Union of New Jersey (*Emerson L. Darnell,* attorney; *Robert L. Sloan,* on the letter brief).

The opinion of the Court was delivered by

WILENTZ, C.J.

This appeal is from a judgment declaring invalid the current procedure employed by law enforcement personnel in issuing tickets for traffic violations. The Law Division held that for a ticket to be valid a judge, judicial clerk, or deputy clerk must, after the officer has given the driver a ticket, make an independent determination of probable cause. We hold that no such probable cause finding is required for a complaint charging the commission of a traffic offense.

Although we hold that the conviction under review is not subject to any attack based on the absence of this procedure, and vacate the order below dismissing the complaint, we nonetheless remand the matter to the municipal court for a new trial, as it is undisputed that defendant received inadequate advice of his right to counsel.

## I.

Defendant, Manuel Gonzalez, was stopped on March 25, 1988, by Patrolman Dale Baranoski of the Westampton Township Police Department for speeding. After asking defendant to step out of his vehicle and patting him down, Officer Baranoski discovered marijuana in the defendant's pocket. The officer issued defendant a summons, which was part of a uniform traffic ticket, citing defendant for the possession of a controlled dangerous substance in a motor vehicle contrary to *N.J.S.A.* 39:4–49.1, speeding, and also for driving without insurance, since the defendant had failed to produce the proper documentation. The complaint, also part of the uniform traffic ticket, was completed and signed by Officer Baranoski, and routinely filed with the Westampton Municipal Court. No hearing on probable cause was held.

The defendant, appearing *pro se*, pled guilty to the speeding and insurance charges, but pled not guilty to the marijuana charge. He was tried in municipal court and found guilty of the possession of .06 grams of marijuana in a motor vehicle. As provided under *N.J.S.A.* 39:4–49.1, the municipal court imposed a fine of $50 and suspended the defendant's driver's license for two years.

Having retained an attorney, Mr. Gonzalez appealed to the Superior Court where he was entitled to a trial *de novo* on the record. *R.* 3:23–8. The trial court, in an opinion issued March 7, 1989, determined that the complaint should be dismissed, because of the absence of a "neutral, impartial" determination of probable cause. It further held that because the defendant

had not been represented by counsel below, and because of the potential magnitude of the issue, the defendant's failure to raise the issue at his initial trial did not preclude him from raising it on appeal.

On March 14, 1989, the trial court issued an order staying all Burlington County appeals, either of traffic offense convictions or from interlocutory orders, in which the defendants raised the probable cause issue, and further staying those pending proceedings in municipal courts in which defendants sought dismissal based on that issue. In light of the potential disruption that decision could create in the processing of traffic violations, we certified the case for direct appeal on our own motion, and issued a further order staying the judgment and order below. Under our order, all traffic and other municipal cases were to be prosecuted and appealed under the procedures in place prior to the trial court's decision, with the exception that license revocations and jail sentences imposed in cases covered by the initial order would remain stayed.

## II.

When a police officer stops a motorist for a traffic offense, the officer may immediately issue a summons, which is part of a uniform traffic ticket, and subsequently file the complaint. This procedure is authorized under *Rule* 7:3–1, which governs process in the municipal courts:

> If the Administrative Director of the Courts has ... prescribed the form of complaint and summons for non-indictable offenses, a law enforcement officer may make, sign and issue such complaint and summons, serving the summons upon the defendant and thereafter, without unnecessary delay, filing the complaint with the court named therein.... [*R.* 7:3–1(b).]

*Rule* 7:6–1 specifically applies these procedures to traffic violations:

> The complaint may be made and signed by a law enforcement officer, or by any other person, but the summons shall be signed and issued only by such officer, or the judge, clerk or deputy clerk of the court in which the complaint is, or is to be filed. *R.* 7:3 relating to warrants and summons in respect of nonindictable offenses generally, shall be applicable to cases involving a traffic offense, except as otherwise herein provided. [*R.* 7:6–1(b), *see also N.J.S.A.* 39:5–25

(allowing law enforcement personnel to issue summons instead of making arrest for motor vehicle violations).]

Under *Rule* 1:32-3, the Administrative Director of the Courts, subject to this Court's approval, determines the authorized form for uniform traffic tickets for use by the municipal court judges, who are responsible for the dissemination and record-keeping of the tickets.

Each ticket is a four-part carbon form, containing the complaint, two recordkeeping copies, and the summons, which is given to the violator at the scene. The same information, including the name, address, and other information about the violator, a description of the vehicle, a description of the violation, the police officer's signature, and the date of the violator's required court appearance, is called for and imprints on all four parts of the form. On the complaint part, the officer's signature appears below the statement: "The undersigned further states that he has just and reasonable grounds to believe that the person named above committed the offense(s) herein set forth [contrary][1] to law." On the summons, a carbon copy of the same signature appears under the statement: "You are notified that the undersigned will file a complaint in this court charging you with the offense set forth above." No oath or verification is required.

Neither the Rules cited above nor the ticket itself requires or contemplates a probable cause hearing. Indeed, the detailed instructions that the Administrative Office of the Courts has sent to municipal courts along with its most recent ticket specimen, that cover printing, police protocol, information required on the officer's copy of the ticket, and recordkeeping, make no mention of such a hearing. See Memorandum of July 1985 from the Administrative Office of the Courts to the Judges of the Municipal Courts.

---

[1]The omission of this word is clearly inadvertent.

 These Rules, as implemented in accordance with their terms by the Administrative Office of the Courts, make it clear, therefore, that the procedure used here was proper. A problem arises, however, from the reference made in *Rule* 7:3–1 to Rules governing indictable offenses stating that "[t]he provisions of *R.* 3:2 (complaint), *R.* 3:3 (warrant or summons upon complaint), *R.* 3:4–1 (appearance before committing judge) and *R.* 3:4–2 (procedure after filing of complaint) are applicable to municipal courts in respect of all non-indictable offenses, except as follows." Among these incorporated provisions is *Rule* 3:3–1(a) requiring a judge, clerk, or deputy clerk to determine probable cause before issuing a summons or warrant. The exceptions that follow, however, include the provision allowing law enforcement officers to issue summonses and file complaints that are part of an approved form. *R.* 7:3–1(b).

Because this exception does not explicitly eliminate the probable cause requirement, the trial court read the Rule to continue to require it. It is clear from the Rules themselves, however, and from the purposes behind them that a requirement of probable cause hearings for traffic offenses should not be implied.

The trial court did not suggest, nor does the defendant, that a probable cause hearing must be held before a traffic summons may issue. Rather, what is contemplated is a required validation of the summons *after* it has already been issued. The Rules governing indictable offenses, however, referred to in *Rule* 7:3–1, which the court below would make applicable to traffic offenses as well as to municipal offenses generally, are primarily concerned with the validity of the summons *before* it is issued.

*Rule* 3:2 provides, in the case of indictable offenses and those non-indictable offenses to which it may apply, that

[t]he complaint shall be a written statement of the essential facts constituting the offense charged made upon oath before a judge or other person empowered by law to take complaints. Whenever practicable a copy thereof shall be served on the defendant at the time of service of the summons or execution of the

warrant. The clerk or deputy clerk shall accept for filing any complaint made by any person.

It is only on the subsequent issuance of a summons or warrant that a probable cause determination is required:

A summons or arrest warrant shall be issued by a judge of a court having jurisdiction in the municipality in which the offense is alleged to have been committed or in which the defendant may be found, or by the clerk or a deputy clerk of that court, only if it appears to such judge, clerk or deputy clerk from the complaint, or from an affidavit or deposition taken under oath, that there is probable cause to believe that an offense has been committed and that the defendant has committed it. [*R.* 3:3–1(a).]

Under *Rule* 7:3–1 the chronology is reversed ("serving the summons ... and thereafter ... filing the complaint...."). If under *Rule* 7:3–1 the officer may make, sign, and issue the summons without a probable cause hearing, it is unlikely that one should be required thereafter when all the officer does is file the complaint. In addition, *Rule* 7:6–1 allows "any other person" besides a law enforcement officer to make and sign a complaint, but the summons shall be signed and issued only by the law enforcement officer or one of the judicial officials. Clearly, the Rules focus on the issuance of the summons as the point at which some procedure, whether the probable cause hearing or the police officer's own determination, would be necessary. In the case of traffic offenses governed by *Rules* 7:3–1 and 7:6–1, the exigencies of law enforcement would make a hearing at such a time infeasible. Those exigencies far outweigh whatever protection such a hearing would offer.

The trial court's reading of these Rules contravenes the accepted practice conducted under the Rules. Typically, large numbers of complaints are filed at once, often not by the individual officers who have signed the complaints but by others in the department. Those complaints are then processed and organized by the municipal court staff under the procedural guidelines concerning traffic offenses issued by the Administrative Office of the Courts, *New Jersey Municipal Court Procedures Manual,* Part II, § 1.3.1, at 40, which contemplate such multiple filings but not a probable cause hearing. Al-

though an unconstitutional law enforcement practice cannot be converted into a constitutional one simply because it is traditional, accepted procedure can have a bearing on the proper interpretation of the Rules. *See R.* 1:1–2 ("The rules ... shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."). Very simply, those drafting the Rules (initially the Supreme Court Criminal Practice Committee) are undoubtedly aware of this universally accepted procedure. A change as radical as that imposed by the trial court would have been recommended by that Committee only in the clearest, most unambiguous manner.

The contemplated procedure would not only disrupt the present procedure, but would confer little benefit to traffic offense suspects. This lack of actual benefit would not overcome a constitutional requirement, but the worth—or lack of it—of a practice is of obvious relevance in interpreting these Rules.

The protection offered by a probable cause hearing held when the complaint is filed would be minimal in the overwhelming majority of traffic cases. The process would by necessity be perfunctory given the immense number of complaints the judge, clerk, or deputy clerk would have for disposition, and given the little additional information of value available apart from the police officer's own repetitive assertion of his or her basis for probable cause. In those cases for which it is suggested that the protection is most necessary—when a police officer may have misperceived a violation—the defendant is least likely to benefit, as there will usually be nothing to contradict the assertion of an officer who, in those circumstances, would be very much interested in maintaining the version of the violation set forth in the complaint.

Although we recognize that certain traffic violations can result in the imposition of serious penalties (see discussion *infra* at 607–608), we do not believe the added protection, if

any, afforded by an independent probable cause determination in those cases justifies the enormous cost that such a process would entail.

We also note that citizens are not without protection in the absence of a formal probable cause hearing. We assume that most police officers perform their duties honestly, conscientiously, and well. Part of that job includes the duty not to issue citations for violations unless the officer has probable cause. *State v. Latorre,* 228 *N.J.Super.* 314, 318 (App.Div. 1988). By signing the statement on the complaint that there are "just and reasonable grounds to believe that the person named above committed the offense(s) herein set forth to law," the officer so attests.

The Appellate Division has held that when a private citizen files a complaint in a matter involving a non-traffic municipal offense, a summons may not issue unless there is a finding of probable cause by a judge, clerk, or deputy clerk. *State v. Ross,* 189 *N.J.Super.* 67, 74 (App.Div.1983). In *Ross,* neighbors of the defendant, disturbed by her dogs barking late at night, filed complaints charging her with violating the local anti-noise ordinance, and *themselves* signed the summonses. *Id.* at 70–71. The court found the issuance of the summonses by the complaining witnesses to constitute "so egregious a violation of the underlying principles of proper practice as to require the reversal of both convictions." *Id.* at 72. In *State v. Salzman,* 228 *N.J.Super.* 109 (App.Div.1987), the court found that a probable cause hearing was also necessary for a complaint signed by a police officer when a summons had already been issued for the violation of an anti-noise ordinance.[2] Some of the language in these earlier Appellate Division opinions and some want of precision in our Rules may justly have led the trial court to its interpretation.

---

[2]We make no determination on the applicability of our holding to non-traffic municipal offenses. We read *Salzman* as applying only to those types of offenses.

The issue of proper procedure for traffic violations was not before the court in *Ross* and *Salzman,* however. When courts have considered the procedure to be followed in cases involving traffic offenses, they have found that the police officer's own assessment of probable cause, as attested to by his or her signature on the complaint, sufficed. *See Latorre, supra,* 228 *N.J.Super.* at 318 (citing *Ross* as requiring "that a determination of probable cause be made by the issuing officer" for a traffic violation summons). In *State v. Brennan,* 229 *N.J.Super.* 342 (App.Div.1988), the court stated that where the defendant was served an unsigned summons for driving while intoxicated, "the complaint need not be sworn to before a judge or court clerk," *id.* at 345, and held that the failure of the officer to sign the summons amounted to a "technical omission," *id.* at 347. The complaint, however, would have to be signed within the thirty-day statute of limitations to be valid, the court held, because it is by so signing that the police officer certifies that he has probable cause. *Id.* at 349; *see also State ex rel. Purcell v. Superior Court,* 109 *Ariz.* 460, 461–62, 511 *P.*2d 642, 643–44 (1973) (because of minimal function complaint served after arrest, police officer's certification by signature on traffic ticket complaint rather than statement sworn to in front of a magistrate sufficed); *Stubert v. County Court for the County of Jefferson,* 163 *Colo.* 535, 433 *P.*2d 97, 100, 103 (1967) (neither statutory nor constitutional provisions require verification of complaint where a summons has been served for traffic violation); *People v. Boback,* 23 *N.Y.*2d 189, 192–94, 295 *N.Y.S.*2d 912, 915–917, 243 *N.E.*2d 135, 138 (1968) (complaint as part of uniform traffic ticket not only need not be sworn, but need not even be signed by officer with personal knowledge of offense). *But see City of Dothan v. Holloway,* 501 *So.*2d 1136, 1137, 1139 (Ala.1986) (although failure of an officer to verify a complaint would not deprive court of subject matter jurisdiction if defendant presented herself in court, proper procedure under Alabama Rules was to have ticket verified); *People v. Harding,* 34 *Ill.*2d 475, 480, 216 *N.E.*2d 147, 151–52 (1966) (although provi-

sions of neither United States nor Illinois constitutions should be "extended to require a sworn complaint as a jurisdictional prerequisite to the prosecution of a criminal offense," specific statutory provisions required verification of uniform traffic ticket complaint). It would appear from the Rules that the lack of any requirement of probable cause determinations is the same for other municipal violations as they are for traffic offenses. However, the effect of possible differences—for instance, the sequence of complaint and summons, the varying burden on law enforcement, and the like—have not been analyzed in this matter, and, in any event, that issue is not before us.

### III.

Although the court in *Ross* noted that the issuance of a summons in a quasi-criminal matter under the signature of a private citizen "violate[d] the spirit if not the letter of the Fourth Amendment," *Ross, supra,* 189 *N.J.Super.* at 74, the court did not hold that an independent probable cause hearing is constitutionally mandated for the issuance of a summons or the filing of a complaint. The trial court here similarly based its holding not on constitutional principles but on its reading of the rules and controlling Appellate Division cases, including *Ross.* The defendant before us argues, however, that an independent probable cause determination is required as a matter of constitutional law when a complaint is filed for a traffic offense.[3]

■ When a warrant is issued for a person's arrest, it is of course necessary for a judge, clerk, or deputy clerk to determine if there is probable cause that the particular suspect has committed the offense. *Giordenello v. United States,* 357 *U.S.*

---

[3]While defendant has in his arguments referred to the New Jersey Constitution, he makes no separate argument on that ground. We see no basis for reaching a different result under the New Jersey Constitution.

480, 486, 78 *S.Ct.* 1245, 1250, 2 *L.Ed.*2d 1503, 1509 (1958); *State v. Ruotolo,* 52 *N.J.* 508, 515 (1968); *Ross, supra,* 189 *N.J.Super.* at 73. Although under certain circumstances a police officer may arrest without a warrant, *Gerstein v. Pugh,* 420 *U.S.* 103, 113–14, 95 *S.Ct.* 854, 862–63, 43 *L.Ed.*2d 54, 65 (1975); *State v. Fariello,* 71 *N.J.* 552, 568 (1976); *see Wong Sun v. United States,* 371 *U.S.* 471, 479, 83 *S.Ct.* 407, 413, 9 *L.Ed.*2d 441, 450 (1963); *State v. Sims,* 75 *N.J.* 337, 353 (1978); *State v. Morse,* 54 *N.J.* 32, 35 (1969), if the arrested person is to be detained for any significant amount of time, a determination of probable cause must be made, *Gerstein, supra,* 420 *U.S.* at 114, 95 *S.Ct.* at 863, 43 *L.Ed.*2d at 65; *see also State v. Hurtado,* 219 *N.J.Super.* 12, 23 (App.Div.1987) (Skillman, J., dissenting), *rev'd on dissent,* 113 *N.J.* 1 (1988) (Although police could temporarily detain defendant before issuing summons, subsequent warrantless arrest and detention for misdemeanor were unlawful). These obligations are of constitutional dimension.

Without the risk of detention, a suspect's interests in liberty and freedom from unreasonable prosecution are still paramount, but the procedures required to protect those interests need not be as extreme or absolute, because the threat to those interests is not as great. Determining what process is due necessitates an analysis of the underlying factors and circumstances, including not only the threat to a suspect's liberty but also the hindrance of law enforcement the process would create. *Delaware v. Prouse,* 440 *U.S.* 648, 654, 99 *S.Ct.* 1391, 1396, 59 *L.Ed.*2d 660, 667–68 (1979) ("the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests"); *see also Rodriguez v. Rosenblatt,* 58 *N.J.* 281, 287 (1971) (in holding that defendant charged with disorderly person offense is entitled to assigned counsel when subject to imprisonment or other consequence of magnitude, we sought "judicial doctrine which, while justly protecting the interests of the accused,

avoids senseless administrative demands which could jeopardize the very structure of municipal court justice.").

When a citizen is not subject to arrest or detention, therefore, as is the case with a summons, there is no constitutional requirement that a magistrate determine probable cause. *Gerstein, supra,* 420 *U.S.* at 119, 125 n. 26, 95 *S.Ct.* at 865, 869 n. 26, 43 *L.Ed.*2d at 68, 72 n. 26 (probable cause determination is "not a prerequisite to prosecution by information," and "is required only for those suspects who suffer restraints on liberty other than the condition that they appear for trial."); *United States v. Birkenstock,* 823 *F.*2d 1026 (7th Cir.1987); *United States v. Bohrer,* 807 *F.*2d 159 (10th Cir.1986) (United States Constitution requires no showing of probable cause when a summons instead of a warrant issues on an information for an Internal Revenue Code violation); *see also United States v. Millican,* 600 *F.*2d 273, 275 (5th Cir.1979) (Constitution does not mandate reversal of conviction of one charged with Internal Revenue Code violation whose summons has not been verified, but "as a matter of practice ... defendant should have been afforded a probable cause hearing," where he had repeatedly requested one), *cert. denied,* 455 *U.S.* 915, 100 *S.Ct.* 1274, 63 *L.Ed.*2d 578 (1980). Under these parameters, the procedure required below is by no means constitutionally mandated; not only would it apply to a summons, but it would be invoked well after the initial issuance. The process would offer little good at great cost.

Because the current procedure for processing traffic violations violates no constitutional imperative and accords with the Rules, the question before us becomes one of policy insofar as future cases are concerned. If we had any doubt that our legal analysis represented the correct policy, we would change the Rules for future cases, exercising our power over practice and procedure. For the reasons noted above (see *supra* at 599 –601) and for others, we see no reason to do so.

The impact of a required probable cause determination would be substantial. Nearly six million traffic complaints were filed in this state during the 1988 court year, over three and one-half million of those for parking violations.[4] It would be impossible to process those complaints without creating extraordinary backlog if a police officer were required to come to court to attest to the probable cause for each one, and a neutral official required to determine and find probable cause each time.[5] Perhaps the most significant burden would be placed on state troopers who regularly patrol in several municipalities, and who during each shift issue summonses answerable in several different courts. The municipal court system itself would face significant adjustments were a judge, clerk, or deputy clerk required to examine each complaint filed.

Given the volume of traffic complaints filed in our municipal courts, the immediate effect of the ruling below, if allowed to stand, would be significant. Most traffic cases currently before a court would have to be invalidated if the thirty-day statute of limitations had expired.[6] The experience in Burlington County alone, where as a result of the decision below all traffic proceedings raising the probable cause issue were stayed, provides a vivid idea of these consequences. Of course, burdensome adjustments must be made and difficult consequences endured when they are constitutionally required. But without such a requirement, and without appreciable benefits, we see no reason to impose them.

---

[4]These figures are from statistics compiled by the Statistical Service Unit of the Administrative Office of the Courts.

[5]Defense counsel suggested at oral argument that the police officer need not appear for a probable cause determination. If that were indeed the holding below, we would see no benefit whatsoever from this added paperwork.

[6]We assume that if a probable cause determination were required, the failure to hold it could be corrected, just as the police officer's failure to sign the complaint can be corrected, within thirty days of the filing of the complaint. *See Brennan, supra,* 229 *N.J.Super.* at 349.

The scope of our decision today is limited to traffic offenses. As noted above, *supra* at 601 n.2, we make no determination on the applicability of this holding to other violations of municipal ordinances, for that issue has not been litigated before us. The decision applies to all traffic offenses as defined under *Rule* 7:6–1, "involving the violation of statutes or ordinances relating to the operation or use of motor vehicles," including parking violations as well as moving offenses such as speeding. This category of offenses also includes more serious violations such as driving while intoxicated, *N.J.S.A.* 39:4–50, and the possession of a controlled dangerous substance in a motor vehicle, *N.J.S.A.* 39:4–49.1, the offense charged in this case.

We are well aware, as defendant has urged, of the considerable consequences a conviction for one of these more serious offenses may have, and do not ignore the burden imposed by a mandatory two year suspension of driving privileges, or by the even greater penalties that may be assessed for repeat violations of driving while intoxicated, *see N.J.S.A.* 39:4–50(a)(2), (3). Nonetheless, it is clear not only from our reading of *Rules* 7:6–1 and 7:3–1 but from the policy on which the Rules are based that they apply to these more serious offenses as they do to all traffic offenses. The Rules have been arrived at by the same balancing of the intrusion on individual interests with the needs of law enforcement as forms the basis for the constitutional distinctions determining what process is due when either a warrant or summons is issued. In determining whether a probable cause finding is necessary, the focus of this balancing is always on the intrusiveness of the process charging the offense, and not on the seriousness of the consequences that would result in the event of a conviction. *See Gerstein, supra,* 420 *U.S.* at 118–19, 95 *S.Ct.* at 865–66, 43 *L.Ed.*2d at 68 (requirement of neutral probable cause determination to justify pretrial detention does not imply such a requirement for the decision to prosecute). The requirement of an indictment for the most serious crimes, *see State v. Senno,* 79 *N.J.* 216, 223

(1979), of course, amounts to a determination of probable cause before any process is issued in those instances.

■ Both parties have agreed that apart from our ruling on the probable cause issue, the conviction must be reversed and the matter remanded because the defendant was not adequately advised of his right to counsel. In view of instructions we have issued to municipal courts that defendants must be individually advised of their right to counsel,[7] we accept the parties' mutual assessment of constitutional infirmity and remand the matter to the municipal court for a new trial on the possession count.

Faced with the disparate interpretations of the Rules involved in this case, we must conclude that despite our confidence in our reading of them, they are in need of clarification. Accordingly, we ask the Committee on Criminal Practice and the Committee on Municipal Courts jointly to inform us of any revisions in the Rules necessary in light of this decision. We leave it to those Committees to determine whether any further advantage may be achieved through the clarification of the Rules on related issues.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

---

[7]Memorandum from *Chief Justice to Municipal Court Judges re: R. 3:4–2—Advising Defendants of their Rights*, February 25, 1986.