248 N.J. Super. 189 (1990)
590 A.2d 708
STATE OF NEW JERSEY, PLAINTIFF,
v.
THOMAS R. KENISON, DEFENDANT.
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT MADSEN, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided February 6, 1990.
*191 Susan W. Sciacca for plaintiff.
Paul C. Cavaliere, III for defendants (Cavaliere & Cavaliere, attorneys).
Debra E. Guston for amici curiae LAMBDA Legal Defense & Education Fund, ACLU of New Jersey, the Anti-Violence Project of the New Jersey Lesbian & Gay Coalition, and the New York City Gay & Lesbian Anti-Violence Project (Herbert Guston, attorney; Evan Wolfson of the New York Bar, of counsel).
KOLE, J.A.D. (Retired and temporarily assigned on recall).
The issue presented in these cases is the validity of a complaint-summons issued in connection with prosecutions and convictions in the municipal court for violation of a disorderly persons statute  here, N.J.S.A. 2C:14-4 (lewdness). The matter was raised for the first time, by motions to dismiss the complaints-summonses and reverse the convictions, in these de novo appeals to this court from defendants' convictions in that court for lewdness. This, of course, can be done. See State v. *192 Salzman, 228 N.J. Super. 109, 111, 549 A.2d 46 (App.Div. 1987); State v. Ross, 189 N.J. Super. 67, 72, 458 A.2d 1299 (App.Div. 1983), certif. den. 95 N.J. 197, 470 A.2d 419 (1983).
The manner in which the complaint-summons was issued is similar in each case.
The lewdness offense involved a charge of masturbating in the men's room at the Vince Lombardi service area (Vince Lombardi), located on the New Jersey Turnpike in the Borough of Ridgefield, Bergen County. For the purpose of these motions, the facts will merely be given sketchily.
On the night of October 16, 1988, defendant Kenison was in front of a urinal in the back urinal area of the men's room. At the next or nearby urinal was a State Police Trooper, John O'Rourke, in plainclothes. After he observed Kenison masturbating some distance from the urinal in which Kenison had been standing, he stated he was a State Police officer, placed Kenison under arrest, took him to an area of Vince Lombardi used by the State Police as an alleged substation or satellite of its Newark turnpike station, and filled in a complaint-summons factually charging the lewdness offense. O'Rourke signed the complaint, which stated that it was signed under oath, and the alleged oath was taken by State Trooper Richard Gacina, the other trooper on the lewdness detail at Vince Lombardi. O'Rourke signed the summons portion of the complaint form. The complaint-summons was then served by O'Rourke on defendant Kenison, who was then released.
On the night of November 3, 1988, Trooper Gacina arrested defendant Madsen under somewhat similar circumstances. Madsen was in front of a urinal in the back urinal area of the men's room. At the next or nearby urinal was Trooper Gacina in plainclothes. After he observed Madsen masturbating some distance from the front of the urinal in which Madsen had been standing, Gacina stated he was a State Police officer, placed Madsen under arrest, took him to the same area of Vince Lombardi used by the State Police as an alleged substation or *193 satellite of its Newark turnpike station, and filled in a complaint-summons factually charging the lewdness offense. Gacina signed the complaint, which stated that it was signed under oath, and the alleged oath was taken by State Trooper O'Rourke, the other trooper on the lewdness detail at Vince Lombardi. Gacina signed the summons portion of the complaint form. The complaint-summons was then served by Gacina on defendant Madsen, who was then released.
Relying on Ross and Salzman, supra, both Appellate Division cases, defendants contend that the complaint-summons issued in their cases are so legally deficient as to warrant a dismissal thereof and a reversal of their convictions.
The holdings in Ross and Salzman were recently summarized by the Supreme Court in State v. Gonzalez, 114 N.J. 592, 601, 556 A.2d 323 (1989), where it held that the trial court in Gonzalez erroneously determined that a uniform traffic summons was invalid because of the absence of a "neutral, impartial" determination of probable cause after a probable cause hearing by a judge, clerk or deputy clerk.[1] The Supreme Court said:
The Appellate Division has held that when a private citizen files a complaint in a matter involving a non-traffic municipal offense, a summons may not issue unless there is a finding of probable cause by a judge, clerk or deputy clerk. State v. Ross, 189 N.J. Super. 67, 74 [458 A.2d 1299] (App.Div. 1983). In Ross, neighbors of the defendant, disturbed by her dogs barking late at night, filed complaints charging her with violating the anti-noise ordinance, and themselves signed the summonses. Id. at 70-71 [458 A.2d 1299]. The court found the issuance of the summonses by the complaining witnesses to constitute "so egregious a violation of the underlying principles of proper practice as to require the reversal of both convictions". Id. at 72 [458 A.2d 1299]. In State v. Salzman, 228 N.J. Super. 109 [549 A.2d 46] (App.Div. 1987), the court found that a probable cause hearing was also necessary for a complaint signed by a police *194 officer when a summons had already been issued for the violation of an anti-noise ordinance. [Id. at 601, 556 A.2d 323]
In Ross, the Appellate Division gave as a reason for its concern, even though a summons, rather than a warrant, was issued, the following: The proceedings are quasi-criminal in nature. Although there is a qualitative difference in consequences  deprivation of freedom where a warrant is involved  still, the summons in lieu of warrant is not without consequence. It initiates the criminal process, compels appearance to answer the complaint, and may lead to the routine issuance of an arrest warrant upon failure of appearance.
Further, the court said:
... While it is evidently the lesser consequential significance of a summons and the lesser consequence of matters within municipal court dispositional jurisdiction which justify the law enforcement officer exception of R.7:3-1(b), it is the nevertheless grave import of the summons, in the structure of the criminal justice process, which requires that a probable cause determination be made as the prerequisite for its issuance as well and which also requires a strict construction of R.7:3-1(b) to the end that an appropriate neutral official make that determination. For the determination to be made by the complaining witness and for the summons to be issued over his signature is fundamentally offensive to the most elementary notions of due process, violates the spirit if not the letter of the Fourth Amendment, and is a blatant and intolerable violation of our rules of practice. The criminal and quasi-criminal system is neither designed nor intended to provide a vehicle for the raising and settlement of purely private disputes. The process here, therefore, constituted a subversion of the basic distinction between criminal and civil justice. [189 N.J. Super. at 74, 458 A.2d 1299]
R.7:3-1(b), which contains the law enforcement officer exception to which Ross referred, provides that in the municipal courts, if the Administrative Director of the Courts, pursuant to R.1:32-3, has prescribed the form of complaint and summons for non-indictable offenses, a law enforcement officer may make, sign and issue such complaint and summons, serving the summons upon defendant and thereafter filing the complaint with the court named therein. R.1:32-3 provides that the Administrative Director may, "subject to the approval of the Supreme Court, prescribe forms of process and such other forms for the implementation of these rules as shall be necessary from time to time."
*195 The concern expressed in Ross and Salzman as to the effect of a summons issued in a quasi-criminal matter without a probable cause hearing has been somewhat diminished by the Supreme Court's dictum in Gonzalez. There, while it discussed only the traffic offense summons, it recognized the serious consequences of a guilty determination that might result in such cases. Nevertheless, it said, as to the situation where a summons (as distinguished from an arrest warrant) is issued for a quasi-criminal traffic offense:
We also note that citizens are not without protection in the absence of a formal probable cause hearing. We assume that most police officers perform their duties honestly, conscientiously, and well. Part of that job includes the duty not to issue citations for violations unless the officer has probable cause.... By signing the statements on the complaint that there are "just and reasonable grounds to believe that the person named above committed the offense(s) herein set forth [contrary] to law," the officer so attests. [114 N.J. at 601, 556 A.2d 323]
....
... When a warrant is issued for a person's arrest, it is of course necessary for a judge, clerk, or deputy clerk to determine if there is probable cause that the particular suspect has committed the offense.... Although under the circumstances a police officer may arrest without a warrant, ... if the arrested person is to be detained for any significant amount of time, a determination of probable cause must be made....
Without the risk of detention, a suspect's interests in liberty and freedom from unreasonable prosecution are still paramount, but the procedures required to protect those interests need not be as extreme or absolute, because the threat to those interests is not as great. Determining what process is due necessitates an analysis of the underlying factors and circumstances, including not only the threat to a suspect's liberty but also the hindrance of law enforcement the process would create. [Id. at 603-604, 556 A.2d 323]
When a citizen is not subject to arrest or detention, therefore, as is the case with a summons, there is no constitutional requirement that a magistrate determine probable cause. Gerstein, supra, 420 U.S. [103, at 119, 125 n. 26, 95 S.Ct. 854, 865, 869 n. 26, 43 L.Ed.2d 54] ..., (probable cause determination is "not a prerequisite to prosecution by information," and "is required only for those suspects who suffer restraints on liberty other than the condition that they appear for trial."); United States v. Birkenstock, 823 F.2d 1026 (7th Cir.1987); United States v. Bohrer, 807 F.2d 159 (10th Cir.1986) (United States Constitution requires no showing of probable cause when a summons instead of a warrant issues on an information for an Internal Revenue Code violation); see also United States v. Millican, 600 F.2d 273, 275 (5th Cir.1979) (Constitution *196 does not mandate reversal of conviction of one charged with Internal Revenue Code violation whose summons has not been verified but "as a matter of practice ... defendant should have been afforded a probable cause hearing," where he had repeatedly requested one) cert. denied, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980). Under these parameters, the procedure required below is by no means constitutionally mandated; not only would it apply to a summons, but it would be invoked well after the initial issuance. The process would offer little good at great cost. [Id. at 605, 556 A.2d 323]
... Nonetheless, it is clear not only from our reading of Rules 7:6-1 and 7:3-1 but from the policy on which the Rules are based that they apply to these more serious offenses as they do to all traffic offenses. The Rules have been arrived at by the same balancing of the intrusion on individual interests with the needs of law enforcement as forms the basis for the constitutional distinctions determining what process is due when either a warrant or summons is issued. In determining whether a probable cause finding is necessary, the focus of this balancing is always on the intrusiveness of the process charging the offense, and not on the seriousness of the consequences that would result in the event of a conviction. [Id. at 607, 556 A.2d 323; emphasis supplied]
It would appear that the form of complaint-summons ("CDR 1, Rev. 1-82") used in these cases is not a form approved by the Administrative Office of the Courts (AOC) under R. 7:3-1(b). Indeed, as indicated in a recent exchange of letters (dated June 26, 1989 and July 11, 1989), attached to defendants' brief, between an attorney in another case and the AOC, it appears that the last forms for disorderly persons and nonindictable offenses (other than traffic) promulgated by it under R.7:3-1(b) involved forms similar to those complaints and summonses dealt with in Ross and Salzman.
Hence, it is questionable whether the law enforcement officer exception in R.7:3-1(b) even applies here. Thus, CDR-1 is not a form of complaint and summons for nonindictable offenses with respect to which a law enforcement officer, under that rule, may make, sign and issue a complaint and summons. Under these circumstances, the general provisions of R.7:3-1 relating to criminal nonindictable offenses in the municipal court would apply here,  that is, R.3:2 (complaint), R.3:3 (summons or warrant upon complaint), R.3:4-1 (procedure after arrest) and R.3:4-2 (procedure after filing of complaint).
It is interesting to note, however, that this complaint-summons form (CDR-1) and a complaint-warrant form (CDR-2) *197 were forms that were devised jointly by the New Jersey State Police and the Administrative Office of the Courts in 1968 and have been in use by the State Police for matters in municipal courts since that date, apparently with revisions. Thus, for example, the complaint-summons in the present case shows "Rev. 1-82". See Supreme Court Committee on Criminal Practice 1977 Report, 100 N.J.L.J. 441 (May 19, 1977):
The Criminal Practice Committee recommends adoption and promulgation, pursuant to R.1:32-3, of the Form Summons printed below, to replace the present CDR Form 1 developed jointly in 1968 by the Administrative Office of the Courts and the New Jersey State Police.
Actually, what was recommended was a form of complaint and summons. 100 N.J.L.J. at 442.
It should be noted that while the recommended summons and complaint form was not adopted as such thereafter by the Supreme Court, the 1977 report also contemplated that that form would require only a certification, instead of an oath [similar to that approved in Gonzalez for a traffic summons]. The report stated:
The proposed form would require only a certification and the "arrest booking" process would not be delayed for the filing of a complaint before one authorized to take complaints.

R.3:2 now requires that "the complaint shall be a written statement of the essential facts constituting the offense charged made upon oath before a judge or other person empowered by law to take complaints". We recommend insertion of the words "or certification" as an alternative to the oath requirement. The oath requirement would remain in connection with the filing of the present CDR-2 (complaint-warrant) forms in instances where a summons is not issued ... We find no bar in the federal or state constitutions or our statutes to the requirement that a complaint can be filed on certification and need not be under oath. In fact, the Rules now permit the filing of certain complaints without the requirement of an oath. [100 N.J.L.J. at 442; citing among other things, R.7:3-1(b) and R.7:6-1(a); emphasis supplied]
These recommendations, not adopted as such by the Supreme Court in the 1978 revision of the rules, preceded the decisions in Ross and Salzman, which required probable cause to be established before a judge, court clerk or deputy court clerk in connection with the issuance and service of a summons involving a non-indictable offense.
*198 In its 1985 report, the Supreme Court committee recommended, apparently for the first time as to a substantial category of generally nonindictable offenses, a rule providing that, after an arrest without a warrant, the arrested person be taken to a police station, where the officer in charge, following completion of all post-arrest identification procedures required by law, was to prepare a complaint-summons, issue it to the person arrested and release that person. See Supreme Court Committee on Criminal Practice Report, 116 N.J.L.J. 143-144 (July 25, 1985).[2] The Supreme Court however, did not adopt this recommendation in the promulgation of the 1986 rules. The committee resubmitted the same recommendations in its 1986 report, again suggesting the use of a complaint-summons form for issuance to the arrested person. See Supreme Court Committee on Criminal Practice Report, 118 N.J.L.J. 129 (July 24, 1986). This provision was adopted by the Supreme Court as part of its amendments to R.3:4-1 the following year. See 1987 amendments, R.3:4-1(c).
Accordingly, even though CDR Form 1 (the complaint-summons used in these cases) was not a form promulgated by the Administrative Office of the Courts under R.7:3-1(b), the use of it or a similar form, as well as a complaint-warrant form, in cases involving arrests without a warrant, was adopted and recognized as valid by the Supreme Court in its amendment to R.3:4-1 in 1987.
It may be, as State v. Bobo, 222 N.J. Super. 30, 34-35, 535 A.2d 983 (App.Div. 1987) states, that N.J.S.A. 2A:8-27 was judicially pruned by State v. Ruotolo, 52 N.J. 508, 511-513, 247 A.2d 1 (1968) to save its constitutionality, since the Fourth Amendment mandate, as to issuance of warrants only on probable cause, applies to arrest warrants; and before the warrant *199 may issue, the complaint showing probable cause must be sworn to before a judicial officer  a judge, clerk or deputy clerk of a court. Ruotolo, involving an indictable misdemeanor, invalidated that portion of N.J.S.A. 2A:8-27 authorizing a police chief or any other person acting in that capacity and the police officer in responsible charge of the police station to take any oath, complaint or affidavit to serve as the basis for the issuance of an arrest warrant. Such law enforcement personnel were found not to possess the neutral status and qualifications necessary to comport with the Fourth Amendment probable cause requirement, which, of course, applied only to warrants.
But the statute also permitted such law enforcement personnel to take any oath, complaint or affidavit and issue "summonses" based thereon. It is now clear that that portion of the statute was not invalidated by Ruotolo. I am satisfied that it was so interpreted by the Supreme Court in Gonzalez, supra, 114 N.J. at 603-604, 605, 556 A.2d 323 and in the adoption of R.3:4-1(c) in 1987.
R.3:4-1(c) in relevant part provides:
Whenever a law enforcement officer has effected an arrest without a warrant for an offense other than an offense enumerated in paragraph (b) hereof, the arrested person shall be taken to a police station where the officer in charge shall, after the completion of all post-arrest identification procedures required by law, prepare a complaint-summons, issue it to the person arrested and release that person in lieu of continued detention.[3]
*200 None of the enumerated offenses in paragraph (b) is applicable to the present cases, involving disorderly persons offenses.
Here, unlike Ross and Salzman, each defendant was arrested, some post-arrest identification procedures were effected, a complaint-summons (CDR Form 1) was issued to and served on him and he was released. Those cases are, therefore, inapplicable. Instead, R.3:4-1(c) applies.
By virtue of N.J.S.A. 2A:8-27 and R.3:4-1(c), the police officer in charge of the police station could take any oath, complaint or affidavit to serve as the basis for the issuance of a summons, at least in a matter such as a disorderly persons offense where an arrest was made without a warrant, and issue the complaint-summons, serve it on defendant and release him.
The findings of fact that follow are predicated on the evidence before me.
The State Police had the authority to be involved in an operation such as a lewdness patrol at a service area on the New Jersey Turnpike. By an agreement entered into on July 21, 1981, between the Turnpike Authority and the State Police submitted to the court and defense counsel, the State Police are required to provide a detachment for the purposes of policing the New Jersey Turnpike and in particular, for the purpose of enforcing the laws and regulations of the State of New Jersey and the authority. One of the listed State Police stations serving the turnpike is the Newark station.
It is evident from the foregoing discussion that the Newark station would constitute a police station where, under R.3:4-1(c), a complaint-summons in these cases lawfully could have been issued by the officer in charge after a warrantless arrest.
*201 Further, the officer in charge there could be a State trooper. Under the State Police standard operating procedures, produced in court, a State trooper may be the officer in charge of a station. Thus, shift and assistant shift supervisors may hold the rank of trooper I, trooper II, or trooper. When not specifically designated by the station commander, who has direct supervision of a station, or another superior officer, "the senior member of the prevailing rank assigned to the station will be the officer in charge. Seniority is determined first by rank and second by date of rank." As Detective Sergeant Robert Paganelli stated in his affidavit:
Any member of the State Police regardless of rank could be the person who is in charge of Newark Station at any given time. This extends down to the rank of trooper, since, in the absence of a senior officer, the next ranking trooper would then become the person in charge and would be held accountable for station operations. In this capacity the trooper in charge witnesses the signing of complaints for other troopers and affixes his signature on the CDR-1 (Complaint-summons) on the line which states "Name and Title of Person Administering Oath."
The Vince Lombardi service area is considered a portion of the New Jersey Turnpike and, pursuant to the foregoing turnpike agreement, the State Police troopers who are part of the turnpike detachment, certainly have the authority to police it.
The State contends that the Vince Lombardi detail and situs meet the criteria for a State Police station, as an authorized substation, and that for this reason, the issuance and service of the complaint-summons to defendants in these cases at Vince Lombardi were proper and duly authorized by rule and statute.
Thus, the next issue is whether the operation in these cases at the Vince Lombardi service area legally can be considered as having occurred at an authorized State Police substation, and therefore, at a police station.
There has been an area of the Vince Lombardi service area which has been utilized as a State Police substation since the facility was built. When the plans for the service area were drawn in 1974 a room was designated as a police detention *202 room. The room had been used as a substation off and on, as the need arose. The practice is in full compliance with N.J.S.A. 53:3-2, which provides:
The superintendent shall from time to time establish headquarters and patrol stations in such localities as he shall deem most advisable for the protection of the rural and suburban portions of the State. ...
Although this room at the service area is presently used by the Manhattan Bus Company, the State Police have the use of the office of the service station at Vince Lombardi as a "satellite" facility or substation when the need arises. Equipment for use in this facility, (typewriter, camera, complaints and arrest reports) is transported by the troopers on the detail at Vince Lombardi from the Newark station. The State Police have always considered this area to be a substation and for that reason, complaints are signed and issued there as though they are being handled at the Newark station. The use of on-site processing at substations has been a long-standing practice of the State Police where the processing of those arrested can be done in a more efficient manner than transporting them to a station, including the Newark station.
Defendant contends that the area utilized by the State Police at the Vince Lombardi service area cannot be considered a bona fide substation, because there is no evidence presented by the State that the superintendent had anything to do with the designating of this substation or its use for the lewdness detail officers. Additionally, defendant argues that no communications system or other indicia of a State Police facility exist at the Vince Lombardi service area.
While it is true that N.J.S.A. 53:1-21.2 provides that the superintendent of the State Police is to equip each headquarters, station and mobile unit with a radio, telephone and intercommunicating facilities, there is nothing in the statute that would negate the existence of a substation solely by reason of the absence of such communications equipment. Further, as the evidence before me indicates, all other equipment necessary in the facility is transported from the Newark station *203 by the officers on the detail. Finally, as evidenced by the October 4, 1989 correspondence to Evan Wolfson of the Lambda Legal Defense and Education Fund from Clinton L. Pagano, Superintendent of the Division of State Police, not only is the superintendent aware of, and has implicitly approved, this operation, but he takes the position that the State Police personnel assigned to the Vince Lombardi service area have functioned properly "within the ambit of the law."[4]
The detailing of two plainclothes-State troopers at the Vince Lombardi men's room and the use of the service station there as a substation of the Newark station were in furtherance of, and did effectuate, a plan by the State Police, among other things, to apprehend persons committing acts in the men's room in violation of the lewdness provisions of the state statute. Such a plan was promulgated by reason of complaints made by patrons or others at that facility to the Vince Lombardi *204 management, the Turnpike Authority, and the State Police. The Vince Lombardi management itself, the Marriott, complained to the State Police. It was thus a presumptively valid and reasonable act by the State Police to put into place the procedural plan it had at Vince Lombardi.
The designation of a substation of the Newark turnpike station to process persons arrested under a special State Police detail for a specific purpose  here, the handling of behavior that may be contrary to law at the Vince Lombardi men's room  is a matter of discretion entrusted to the State Police superintendent's broad general and flexible law enforcement powers delegated to him by statute. See In re Bernaducci, 85 N.J. Super. 152, 155-156, 204 A.2d 209 (App.Div. 1964); certif. den. 44 N.J. 402, 209 A.2d 140 (1965).[5]See also In re Petitioners for Rulemaking, etc., 117 N.J. 311, 324-26, 566 A.2d 1154 (1989); Pollution Control Financing Authority of Warren County v. County of Hunterdon, et als., 237 N.J. Super. 163, 171-72, 567 A.2d 243 (App.Div. 1989); Woodland Private Study Group v. State; 109 N.J. 62, 74-75, 533 A.2d 387 (1987); N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 560-564, 384 A.2d 795 (1978); Texter v. Human Services Dep't., 88 N.J. 376, 385-386, 443 A.2d 178 (1982) (administrative agency possesses the ability to be flexible and responsive to changing conditions; such flexibility includes the ability to select those procedures most appropriate to enable it to implement legislative policy; the choice of procedure rests within the discretion of the agency; and courts normally defer to that *205 choice so long as the selection is responsive to the purpose and function of the agency).
A court will not substitute its judgment for the discretion of the superintendent in a situation such as that in the instant cases, absent a clear abuse thereof. There is no such abuse shown here. Nor will the court invalidate his actions in this respect merely because the substation is not fully equipped or does not contain the wherewithal to perform all the post-arrest identification procedures required by law. If he does not fully comply with his duties  e.g., in having complete post-arrest identification material available  he may be subject to sanctions. But those sanctions do not include invalidating an arrest, or the issuance of complaint-summons, effected at that facility. This is particularly so since the person arrested is in no way harmed or prejudiced thereby.
There is no showing that the State Police action in this respect was not premised upon a consideration of all relevant factors; or that it was based on a consideration of irrelevant factors; or that it was contrary to the express or implied provisions of N.J.S.A. 53:3-2 or any other applicable statute. See, In the Matter of John Warren, 117 N.J. 295, 297, 566 A.2d 534 (1989).
Thus, I find that the area utilized by the lewdness detail at the Vince Lombardi service area can be properly categorized as a substation of the New Jersey State Police.
The most troublesome aspect of the procedure involves the manner in which the complaint-summons was issued by the two troopers involved in the lewdness detail.
Pursuant to N.J.S.A. 2A:8-27, the court rules, and the State Police standard operating procedures, there is no doubt that a State trooper in charge of a station is empowered to take the jurat on complaints and issue summonses. The question posed by the present cases, however, is whether one trooper may take the oath on a complaint signed by another at a substation, particularly where these are the only officers assigned to that *206 substation. The answer would not be difficult provided that the higher-ranking officer performs this function, since such an occurrence is contemplated by the law and under procedures promulgated by the State Police, already discussed. He would be the officer in charge of the substation.
A more difficult question is posed by the switching of roles by the troopers.[6] The answer to that question is rooted in the procedures of the State Police superintendent in effectuating his law-enforcement statutory authority. Additionally, as indicated, the judiciary usually should not interfere with such broad law enforcement powers. But if considerations of judicial policy involving such procedures as to defendants in these disorderly persons cases are to be taken into account, and the procedures may have to be changed, a balancing process is required that is discussed below.
The present procedure at Vince Lombardi, by which one officer signs as the affiant under oath before his fellow officer, is a highly efficient law enforcement procedure, resulting in only about a ten-minute detention of the arrested defendant. If the officers cannot switch roles, and the more senior officer makes the arrest, the arrestee will have to be transported back to Newark station for processing. The roundtrip will take two hours. Even at the Newark station, it is possible there could be a trooper in charge who is out-ranked by the arresting officer. If that lower ranking officer in charge takes the jurat on the complaint and issues the summons, the situation is the same as that which the officer left Vince Lombardi to avoid. Moreover, if the arresting officer decides to wait for a higher ranking officer to appear, detention could extend for a considerable period of time. Paradoxically, at any point in time it is conceivable that either Trooper Gacina or Trooper O'Rourke (the arresting officers in one or the other of the present cases) could *207 be the officer in charge at the Newark station, with authority to take the oath and issue the summons. Had they not been partners, either one could have returned to Newark to find the other in charge.[7]
The oath procedure is handled in the same fashion at Vince Lombardi as at the Newark station. The same form is employed. There are no formal hand-raising ceremonies or particular words uttered when the jurat is taken, either at Vince Lombardi or at the Newark station.[8]
The streamlined processing in the present case accomplishes in ten minutes what could otherwise take hours. The lengthier procedure will not give the accused one whit of additional procedural protection. Indeed, it would result in added fear, humiliation and inconvenience. The persons arrested at Vince Lombardi are not searched, handcuffed or transported in a State Police car. They are escorted by plainclothes officers to a processing room. If a change is to be made to the more *208 cumbersome procedure, there should be a rational reason related to the protection of the accused. Here, there is none.
The judicial policy determination, with respect to the method of issuing the complaint-summons at Vince Lombardi used in these cases, is whether that procedure is so intrusive or nonprotective of a defendant's rights and liberty interest, as opposed to the interests and needs of expeditious law enforcement, as to warrant its judicial nullification. See State v. Gonzalez, supra, 114 N.J. at 603-604, 607, 556 A.2d 323. So viewed, I have concluded that the procedures are valid, since, in fact, they aid effective law enforcement, and actually substantially minimize any threat to a defendant's liberty.
With respect to the taking of the oath procedure, as well as the preparation of the complaint-summons in these cases, the Supreme Court's views in Gonzalez, quoted earlier, as to police conduct involving the preparation of a traffic summons are equally applicable here: It assumed that most police officers perform their duties honestly, conscientiously, and well; that part of that job includes the duty not to issue citations for violations unless the officer has probable cause; and that by signing the statement on the complaint that there are just and reasonable grounds to believe that the person named committed the stated offense contrary to law, the officer so attests.
There are some unusual features to the lewdness detail at Vince Lombardi. Thus, some lewdness complaints are often prepared in advance at the Newark station, leaving the name and badge numbers of the trooper involved blank to be filled in at the Vince Lombardi substation. This could mean that the specific non-consenting person before whom the lewd conduct occurred  i.e., the arresting officer  would be inserted in the partially prepared complaint at Vince Lombardi. But the completed complaints do contain, as required by the rules, a "written statement of the essential facts constituting the offense charged." R.3:2. Other blank forms of complaints  e.g., covering other disorderly persons charges or some third or fourth *209 degree offenses under the Criminal Code  are brought by the officers to Vince Lombardi to be fully completed there. The forms of complaints and summonses in the present cases are attached as an appendix to this opinion.[9] The two troopers detailed to Vince Lombardi bring with them a typewriter, a camera and other material which are considered minimally necessary to process an arrestee. The arrestee is merely photographed; a mug shot is not taken. No other post-arrest identification procedures are performed.[10] After the complaint is issued and served, an arrest report is prepared by the trooper making the arrest. The trooper returns the complaints-summonses and arrest reports to the Newark station at the end of his detail that day. The next day the complaint-summonses are filed by someone at the Newark station with the municipal court.
But these practices  although unusual  are designed to expedite the processing of the lewdness offense complaint for both the police and defendant. They do not prejudice defendant and cannot be deemed to invalidate the complaint-summons. They are again matters within the discretion of the State Police in connection with its law enforcement role and their presumptive validity has not been overcome by defendants. Each defendant, upon being served with the complaint and summons, no matter where it was prepared, received ample and fair notice of the nature of the charge against him and obviously was aware of when and where it was alleged that the violation occurred. Cf. State v. Latorre, 228 N.J. Super. 314, 319, 549 A.2d 871 (App.Div. 1988).
*210 In the present cases, each defendant was arrested after having committed a disorderly persons offense in the presence and view of the arresting officer. Such an arrest is valid and presumptively is based on probable cause. State v. Hurtado, 219 N.J. Super. 12, 21, 529 A.2d 1000 (App.Div. 1987), reversed on the dissent 113 N.J. 1, 549 A.2d 428 (1988). See also State v. Dickens, 130 N.J. Super. 73, 76, 325 A.2d 353 (App.Div. 1974). Thus, the complaint thereafter prepared and issued was also based on probable cause.
It is settled that a showing of probable cause to arrest need not equal a prima facie case required to sustain a conviction. No more is demanded than a well-grounded suspicion or belief that an offense is taking place and the individual defendant is a party to it. State v. DeSimone, 60 N.J. 319, 322, 288 A.2d 849 (1972). Such probable cause appears clearly to exist with respect to each defendant. In fact, the lack of such cause to arrest has not been raised in these proceedings.
After arrest each defendant was detained at the Vince Lombardi substation until a complaint-summons was prepared there. The complaint was signed by the arresting officer and is stated to be made under oath. The oath or jurat was taken by another trooper, who reasonably may be considered to be the officer in charge of the police substation; a summons was signed by the arresting officer,[11] and instead of being detained further, defendant was served with the complaint-summons. As indicated, the entire procedure subsequent to the arrest took approximately ten minutes. The detention was for an insubstantial period of time and was essentially temporary in nature.
*211 Even if the officer who took the oath was not authorized to take it, on the thesis that he was not the officer in charge, this does not invalidate the complaint-summons in these cases. As long as the statements in the complaint, at the time they were made, were known or believed by the affiant officer to be under oath or to be used in a court proceeding  as is evident here  they suffice for a valid complaint-summons under R.3:4-1(c), where a warrantless arrest has been made. Cf. State v. Kushner, 192 N.J. Super. 583, 471 A.2d 803 (App.Div. 1983); State v. Angelo's Motor Sales, 125 N.J. Super. 200, 310 A.2d 97 (App. Div. 1973), aff'd sub. nom. State v. Parmigiani, 65 N.J. 154, 156-159, 320 A.2d 161 (1974). See also State In Interest of R.R., 79 N.J. 97, 110, 398 A.2d 76 (1979).
The State argues that even if the complaint-summons issued in these cases was defective, the result would not be a mandatory vacation of defendants' convictions. It points to a line of cases holding that although an initial arrest is invalid, a conviction of the substantive offense resulting therefrom is not adversely affected thereby or reversible by reason thereof. State v. Mulcahy, 202 N.J. Super. 398, 404-405, 495 A.2d 166 (App.Div. 1985), aff'd in pertinent part, 107 N.J. 467, 482, 527 A.2d 368 (1987); Gerstein v. Pugh, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975). Thus, the State contends that, to vacate the convictions of these defendants would be to afford them even greater protection than defendants who have been unreasonably detained pending trial or who were prosecuted as the result of an illegal arrest.
The State's contention, although of interest, is not pertinent to the limited issue in these cases  the validity of the complaint-summons procedures at the alleged Vince Lombardi State Police substation in the light of the applicable State statutory and rule provisions. In any event, Ross and Salzman reversed the convictions predicated on defectively issued process.
The ruling in the instant cases does not at all authorize simply the taking of a trooper's oath by another trooper in *212 connection with the issuance of a complaint-summons. It is limited to the situation where there is an arrest without a warrant and the complaint-summons is issued thereafter at a genuinely constituted State police station or substation. A facility such as the Vince Lombardi substation here may well represent the outer limit of the circumstances under which such complaint-summons may thus be validly issued.
For the foregoing reasons, the complaint-summons in each of these cases is valid. The motion to dismiss such complaint-summons and to reverse the convictions is denied.
*213 
*214 
NOTES
[1] The Supreme Court held that a probable cause hearing and determination was not required with respect to a traffic summons or offense. But it specifically stated: "We make no determination on the applicability of our holding to non-traffic municipal offenses. We read Salzman as applying only to those types of offenses." 114 N.J. at 601, n. 2, 556 A.2d 323.
[2] Compare the committee 1977 report, which referred to the proposed rules in the 1976 report which would reinforce "the policy favoring issuance of summons after arrest, as permitted by the present R.3:4-1," and stating that the "proposed form would assist in implementation of same." 100 N.J.L.J. 441, n.
[3] There may be some question as to whether the authority to take the jurat on a complaint contained in N.J.S.A. 2A-8:27 applies only to municipal police officers in charge of a police station. That provision appears to be so limited, since it does not expressly apply to a State Police station and the officer in charge thereof. It would, however, be anomalous for this statutory grant of authority not to apply to a State Police station and the person in charge of it. R.3:4-1(c) makes no distinction between the State and municipal police. Additionally, under N.J.S.A. 53:2-1, the State Police are designated as "peace officers" of the State to be primarily used in furnishing adequate police protection to the inhabitants of rural sections; "they shall have in general the same powers and authority as are conferred by law upon police officers and constables;" and they may cooperate with any State or local authority in apprehending criminals and preserving law and order. Hence, it is plainly reasonable to construe N.J.S.A. 53:2-1, in conjunction with R.3:4-1(c), as recognizing that the provisions of N.J.S.A. 2A:8-27 authorize the State Police officer in charge of a State Police station to take the jurat on a complaint-summons and issue it to a defendant. Cf. State v. Bigley Bros., Inc., 53 N.J. Super. 264, 268-269, 147 A.2d 52 (App.Div. 1958).
[4] In the letter dated October 4, 1989 to Evan Wolfson from Colonel Clinton L. Pagano, the superintendent stated, in part:

I clearly recognize those laws which protect freedoms of choice and the rights of the constituency you represent must be protected. The charges outlined in your correspondence are serious as are the complaints received through the Patron Services Division of the New Jersey Turnpike Authority where numerous persons raised objections to activities they were witnessing in the mentioned area.
Our program at the Vince Lombardi service area is intended to interdict all forms of prohibited behavior which interrupt the free passage of people and impact upon their welfare while visiting this location. The rest room areas have become a major problem to the motoring public and while we are willing to review our practices, I find no indication at this point that the State Police personnel assigned have not functioned within the ambit of the law.
The letter dated October 17, 1989 to Wolfson from Joan R. McGlockton of the Marriott Corporation stated, in part:
Marriott operates the food service facilities at Vince Lombardi pursuant to a lease agreement with the New Jersey Turnpike Authority. It is my understanding that the Turnpike Authority and the State Police have received numerous complaints concerning inappropriate behavior at this plaza and, in response, have implemented steps to closely monitor such activity.
[5] In addition to N.J.S.A. 53:3-2, the following provisions, among other things, are also applicable: N.J.S.A. 53:1-5 (officers and personnel); N.J.S.A. 53:1-5.2 (change in rank and grade; increase in personnel); N.J.S.A. 53:1-8 (appointment of officers and troopers; term; removal); N.J.S.A. 53:1-10 (rules and regulations; instruction to troopers); and N.J.S.A. 53:2-1 (powers and duties in general; cooperation with other authorities).

It should be noted that the Department of State Police was transferred and constituted the Division of State Police in the Department of Law and Public Safety, see N.J.S.A. 52:17B-6 and -51.
[6] According to Detective Sergeant Paganelli's affidavit, Trooper O'Rourke is senior to Trooper Gacina. It is only in the Madsen matter that O'Rourke took the jurat on the complaint. The roles were reversed in Kenison.
[7] According to testimony of Detective Sergeant Paganelli, although a complaint would have to be sworn to before the officer in charge if a defendant were taken to the Newark station, at the Vince Lombardi service area substation, when dealing with the lewdness detail, the individual authorized to take the oath is simply the member of the team who did not make the arrest. He is the officer in charge for that purpose. The fact that Trooper O'Rourke is senior to Trooper Gacina is not really an issue in this case, since I have concluded that the complaint-summons issuance procedure at Vince Lombardi is valid even if this is so.

Paganelli testified that taking defendants to the Ridgefield Municipal Court was not a feasible alternative, since that facility is closed most evenings, in which event a defendant would have to be detained overnight. The arrests here were in the evening.
[8] In his affidavit, Detective Sergeant Paganelli stated that no formal oral oath is administered regardless of whether the complaint-summons is issued at the Vince Lombardi service area or the Newark station. He said:

The troopers have been instructed that those who are signing as the affiant are swearing that the complaint is true and that those who are jurating the complaint are in effect, administering the oath, witnessing the affiant swear to its truthfulness, and attesting that the complaint is actually being signed by the trooper in question.
[9] If the offense goes beyond the usual disorderly persons offense, the troopers might bring the arrested person to the Newark station for full processing, including completion of the complaint and summons.
[10] For example, handcuffing, fingerprinting, or a check on the prior history of defendant. It should be noted that fingerprinting or taking a mug shot is not permitted by law for a disorderly persons offense. See State v. Conners, 129 N.J.Super, 476, 481, 324 A.2d 85 (App.Div. 1974).
[11] The fact that the arresting officer, rather than the "person in charge" signed the summons is a mere technicality which does not suffice to invalidate the issuance of the complaint-summons under R.3:4-1(c). See Gonzalez, supra, 114 N.J. at 602, 556 A.2d 323; State v. Latorre, 228 N.J. Super. 314, 549 A.2d 871 (App.Div. 1988); State v. Brennan, 229 N.J. Super. 342, 551 A.2d 560 (App. Div. 1988). The complaint-summons, under the circumstances of the present cases, may reasonably be considered to have been "issued" by the officer in charge.