719 A.2d 160 (1998)
315 N.J. Super. 475
Ella SANDUCCI, Plaintiff-Appellant,
v.
CITY OF HOBOKEN, City of Hoboken Police Department, Police Chief Carmen La Bruno, Det. Lt. Edelman Garcia, James Roofe, Anthony Bartley, Daniel Del La Bue, Peter Falco, Individually and as Police Officers of the City of Hoboken, Defendants-Respondents, and
John Doe, a fictitious person, and John Doe, Inc., a Fictitious Co., Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted September 16, 1998.
Decided September 29, 1998.
*161 Joseph A. Fortunato, Montclair, for plaintiff-appellant.
Frank N. Yurasko, Somerville, for defendants-respondents.
Before Judges BAIME, A.A. RODRIGUEZ and KIMMELMAN.
The opinion of the court was delivered by BAIME, P.J.A.D.
This appeal is from a summary judgment dismissing plaintiff's complaint against the City of Hoboken, its Police Department and individual police officers, alleging false arrest *162 and imprisonment and violations of the federal Civil Rights Act (42 U.S.C. § 1983). In a written opinion, the Law Division found that plaintiff's arrest and subsequent detention were supported by probable cause and that no constitutional violation occurred. We agree and affirm the judgment entered essentially for the reasons expressed by the Law Division.

I.
We need not recount the facts at length. On December 16, 1993, plaintiff became embroiled in a dispute with her relatives, Mary and Edward McDonald and Maureen Santoro. After the dispute escalated into a physical altercation, all four individuals were arrested by members of the Hoboken Police Department who had witnessed the fracas. They were then transported to police headquarters.
The McDonalds and Santoro were charged with simple assault and were released. Plaintiff was also charged with simple assault. However, in a separate complaint and warrant, plaintiff was additionally charged with fourth degree stalking based upon the sworn statement of Mary McDonald. In the statement, McDonald claimed that plaintiff had engaged in a course of stalking on three separate occasions. McDonald also applied for a restraining order. Although the warrant accompanying the complaint was not signed by any judicial officer, the record indicates that an "on-call" municipal court judge was telephoned and that bail was immediately set and posted. Plaintiff was released after spending approximately six hours in custody at the Hoboken police station. The charges against plaintiff were subsequently dismissed.
Plaintiff then brought this action against the Hoboken Police Department and individual members of the police force, alleging false arrest and imprisonment and violations of the Civil Rights Act. In its opinion granting defendants' motion for summary judgment, the Law Division found that plaintiff's arrest and detention were justified by the facts known to the police and by those contained in McDonald's sworn statement. It is against this factual backdrop that we examine plaintiff's arguments.

II.
We first consider plaintiff's contention that the Law Division erred by summarily dismissing her claim for violations of the Civil Rights Act. Plaintiff's pleadings in the Law Division were inartfully drafted. Read indulgently, her complaint alleges (1) the police lacked probable cause to arrest her for stalking and (2) her extended detention was violative of the federal Constitution.

A. Probable Cause
Plaintiff concedes that the police had probable cause to arrest her for the disorderly persons offense of simple assault. She asserts, however, that McDonald's sworn statement did not justify her arrest and detention on the charge of fourth degree stalking.
In 1961, the United States Supreme Court rendered its decision in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), holding that a state or local official could be found liable under section 1983 for depriving another person of his or her federal constitutional rights. Several years later, in Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Court recognized that an official could defend against a section 1983 action by asserting a defense of qualified immunity. The evolution of the law that followed was thoroughly described by our Supreme Court in Kirk v. City of Newark, 109 N.J. 173, 536 A.2d 229 (1988). We need not retread upon ground so exhaustively covered by that opinion. Suffice it to say, "a law enforcement official can defend a section 1983 claim by establishing either that he or she acted with probable cause, or even if probable cause did not exit, that a reasonable police officer could have believed in its existence." Id. at 184, 536 A.2d 229 (citing Anderson v. Creighton, 483 U.S. 635, 663, 107 S.Ct. 3034, 3052, 97 L.Ed.2d 523, 546 (1987) (Stevens, J., dissenting)); see also Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Questions presented within this framework of analysis are *163 particularly amenable to disposition by motion. See Kirk v. City of Newark, 109 N.J. at 187, 536 A.2d 229.
Probable cause is an elusive concept heavily dependent upon the particular factual complex. It is more than mere suspicion but less than legal evidence necessary to convict. State v. Mark, 46 N.J. 262, 271, 216 A.2d 377 (1966). It has been described by our Supreme Court as a "well grounded" suspicion that an offense has been committed. State v. Burnett, 42 N.J. 377, 387, 201 A.2d 39 (1964); see also State v. Waltz, 61 N.J. 83, 87, 293 A.2d 167 (1972); State v. Kasabucki, 52 N.J. 110, 116, 244 A.2d 101 (1968); State v. Laws, 50 N.J. 159, 173, 233 A.2d 633 (1967), cert. denied, 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384 (1968); State v. Davis, 50 N.J. 16, 23-25, 231 A.2d 793 (1967), cert. denied, 389 U.S. 1054, 88 S.Ct. 805, 19 L.Ed.2d 852 (1968); State v. Dilley, 49 N.J. 460, 463-64, 231 A.2d 353 (1967).
Our courts have eschewed technisms in reviewing factual circumstances to determine whether probable cause exists. State v. Esteves, 93 N.J. 498, 505, 461 A.2d 1128 (1983). Probable cause must be drawn from the "practical considerations of everyday life" as tested by reasonably prudent persons. Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949). In dealing with probable cause, "as the very name implies, we are concerned with probabilities." Ibid. We must not forget that resolution of questions regarding whether or not probable cause exists often "involves no more than a value judgment upon a factual complex rather than an evident application of a precise rule of law, and indeed a value judgment which inevitably reflects the seasoning and experience of the one who judges." State v. Funicello, 60 N.J. 60, 72-73, 286 A.2d 55 (Weintraub, C.J., concurring), cert. denied sub nom. New Jersey v. Presha, 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972). It bears repeating that "the common and specialized experience and work-a-day knowledge of police [officers] must be taken into account." State v. Contursi, 44 N.J. at 431, 209 A.2d 829. Abstract contemplation will not suffice because the decisions of police officers must be made on the spur of the moment and cannot be viewed fairly from the vantage point of twenty-twenty hindsight. The answer must instead be found "in the tumult of the streets." State v. Gerardo, 53 N.J. 261, 264, 250 A.2d 130 (1969).
Applying these principles, we are satisfied that plaintiff's arrest for stalking was supported by probable cause. In reaching this conclusion, we recognize that McDonald and plaintiff were adversaries. The police nevertheless acted reasonably in relying upon McDonald's sworn statement. Generally, some verification of an anonymous informant's disclosures of criminal activity, as well as a demonstration of his trustworthiness, are necessary in order to establish his credibility, so that such information may fairly and reasonably be assimilated as a proper basis for appropriate police action. See State v. Smith, 155 N.J. 83, 92, 713 A.2d 1033 (1998). Different considerations obtain when the source of the information is an ordinary citizen. See State v. Davis, 104 N.J. 490, 506, 517 A.2d 859 (1986); State v. Canola, 135 N.J.Super. 224, 230, 343 A.2d 110 (App.Div.1975), modified, 73 N.J. 206, 374 A.2d 20 (1977); State v. Kurland, 130 N.J.Super. 110, 114, 325 A.2d 714 (App.Div.1974); State v. Lakomy, 126 N.J.Super. 430, 434, 315 A.2d 46 (App.Div.1974). There is an assumption grounded in common experience that such a person, in reporting criminal activity, would be motivated by factors which are consistent with law enforcement goals. Such indicia of reliability are heightened still further when the citizen provides the police with a sworn statement, thus subjecting himself or herself to potential civil or criminal liability. Here, the police were not dealing with a faceless member of the criminal milieu, but instead with an ordinary citizen who claimed to be the victim of a frightening crime. The police cannot be faulted for acting upon the information received.
Beyond this, at the very least, the police could have reasonably believed that probable cause existed based upon the specific facts known to them. Kirk v. City of Newark, 109 N.J. at 186, 536 A.2d 229. Perhaps further investigation would have disclosed the falsity of McDonald's factual allegations. However, *164 we are aware of no constitutional principle "that a police officer who reasonably believes he has probable cause must conduct further investigation or risk a subsequent charge of failing to exercise due diligence." Id. at 188, 536 A.2d 229. Such a rule could paralyze the police and prevent them from acting to protect the public. We thus conclude that the police did not infringe upon plaintiff's constitutional rights by arresting her for stalking.

B. Extended Detention
Plaintiff contends alternatively that the police violated her constitutional rights by failing to issue a summons rather than a warrant, and by issuing a warrant without the intervention of a judicial officer. We reject this argument.
Plaintiff's contention is ambiguously phrased and requires elucidation. A description of our rules respecting complaint-warrants and complaint-summonses is necessary for an understanding of the issues presented. Our rules of practice provide that when a law enforcement officer has made an arrest without a warrant, the person arrested must be taken to the police station where a complaint is to be prepared. R. 3:4-1(b). If the complaint charges murder, kidnapping, aggravated manslaughter, manslaughter, robbery, aggravated sexual assault, aggravated criminal sexual contact, criminal sexual contact, second degree aggravated assault, aggravated arson, arson, burglary, first or second degree drug offenses, crimes involving the use or possession of a firearm, or conspiracies or attempts to commit such crimes, a "complaint-warrant" must be issued. Ibid.; see also R. 3:3-1. If the complaint charges any other offense, a "complaint-summons" must be issued, unless the law enforcement officer determines (1) the person has previously failed to respond to a summons, (2) the officer has reason to believe that the person is dangerous, (3) there is one or more outstanding arrest warrants for the person, (4) the prosecution of the immediate offense or any other offense would be jeopardized by immediate release, (5) the person cannot be satisfactorily identified, or (6) the officer has reason to believe the person will not appear in response to the summons. R. 3:4-1(b)(1)(a), (b), (c), (d), (e), and (f).
If a complaint-warrant has been issued, the person arrested must be brought before a judge, or in the absence of a judge, a clerk or deputy clerk, municipal court administrator or deputy court administrator "without unnecessary delay" but in no event later than twelve hours after arrest. R. 3:4-1(b)(2). That judicial officer must make a finding as to whether probable cause exists and set bail. Ibid. Such judicial determinations must be made no later than twelve hours after arrest. Ibid.
Where the complainant is a private citizen, a summons may not issue without a finding of probable cause by a judicial officer. R. 3:3-1; see also State v. Bobo, 222 N.J.Super. 30, 535 A.2d 983 (App.Div.1987); State v. Ross, 189 N.J.Super. 67, 458 A.2d 1299 (App.Div.), certif. denied, 95 N.J. 197, 470 A.2d 419 (1983); but see State v. Gonzalez, 114 N.J. 592, 556 A.2d 323 (1989) (summons may issue on a traffic violation without probable cause determination by a judicial officer); cf. State v. Kenison, 248 N.J.Super. 189, 590 A.2d 708 (Law Div.1990), aff'd o.b., 248 N.J.Super. 126, 590 A.2d 677 (App.Div.1991). However, a summons or complaint made by a law enforcement officer may be issued without a finding of probable cause by a judicial officer. R. 3:3-1(a). If a complaint-summons has been prepared by a law enforcement officer, or in the case of a private citizen complainant, a judicial officer has determined that a summons issue, the defendant must be released once identification procedures have been completed.
Within this procedural framework, it is apparent that the police erred by preparing a complaint-warrant. Because plaintiff was charged with stalking and not one of the more serious offenses listed in R. 3:3-1(b)(1) or R. 3:4-1(b), a complaint-summons should have been prepared unless one of the conditions designated by R. 3:4-1(b)(1)(a), (b), (c), (d), (e), or (f) was found to exist. No such finding was made, and thus a complaint-summons should have been issued. It is also apparent that a finding of probable cause by a neutral judicial officer was necessary because the complainant, McDonald, was a private citizen and not a law enforcement *165 officer. Moreover, the judicial officer was required by R. 3:3-1(a) to "note [the] finding [of probable cause] on the face of the summons...."
Assuming the police erred in these particulars, we nevertheless find no violation of plaintiff's federally protected civil rights. As explained by Judge Brotman in O'Brien v. Borough of Woodbury Heights, 679 F.Supp. 429 (D.N.J.1988), a violation of [R. 3:3-1(a) or] R. 3:4-1 "does not constitute a per se violation of plaintiff's constitutional rights." Id. at 437. "An individual defendant's non-compliance with a state-mandated procedure does not in and of itself give rise to a claim cognizable under Section 1983." Ibid. Thus, the failure to issue a complaint-summons rather than a complaint-warrant did not violate a right protected under the Civil rights Act.
Although R. 3:4-1 does incorporate the Fourth Amendment's requirement that a judicial determination of probable cause be obtained "as a prerequisite to extended restraint of liberty following arrest," Gerstein v. Pugh, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975), a detention without a probable cause finding "for a brief period" necessary for the taking of "administrative steps incident to [an] arrest" is not actionable under section 1983, id. at 114, 95 S.Ct. at 863, 43 L.Ed.2d at 65. Further, the United States Supreme Court recently held that "a jurisdiction that provides judicial determination of probable cause [and bail] within [forty-eight] hours of arrest will, as a general matter, comply with [constitutional standards]." County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49, 63 (1991). The Court acknowledged that states are free to consolidate probable cause hearings with other pretrial proceedings, such as bail determinations, and noted that if such decisions do not occur within forty-eight hours after arrest, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." Id. at 57, 111 S.Ct. at 1670, 114 L.Ed.2d at 63. While the Court observed that probable cause and pretrial release determinations provided within forty-eight hours of arrest may not pass constitutional muster if the arrested person can prove that the decision was delayed unreasonably, id. at 56, 111 S.Ct. at 1670, 114 L.Ed.2d at 63, the record here contains no evidence sufficient to warrant submission of that issue to a jury. Thus, even if there was no probable cause determination by a judicial officer following plaintiff's arrest, a question to which we will devote greater attention later in this opinion, no constitutional violation occurred. Plaintiff was released on bail within six hours of her arrest. There was no extended restraint on plaintiff's liberty.

III.
We next examine plaintiff's claim that defendants' failure to issue a complaint-summons and to obtain a probable cause determination from a neutral judicial officer resulted in an actionable false imprisonment. We find no merit in this argument.
A public officer may be held liable for false imprisonment "where he has acted outside his authority." Lakutis v. Greenwood, 9 N.J. 101, 106, 87 A.2d 23 (1952). False imprisonment is the "unlawful restraint upon a [person's] freedom of locomotion." Earl v. Winne, 14 N.J. 119, 128, 101 A.2d 535 (1953). Detention, which may be otherwise lawful in its inception, becomes unlawful when it exceeds that which is appropriate for the circumstances.
In Marion v. Borough of Manasquan, 231 N.J.Super. 320, 555 A.2d 699 (App.Div.1989), for example, plaintiffs were arrested for violating a municipal ordinance requiring persons in beach attire to purchase a beach badge. Plaintiffs were transported to police headquarters where they were placed in separate cells and held in custody for two hours before they were issued a summons and released. The Law Division granted summary judgment dismissing their complaint. We affirmed the judgment on the ground that plaintiffs were unable to satisfy the damages threshold set forth in N.J.S.A. 59:9-2d. In dicta, however, we added that plaintiffs had otherwise established a viable claim of false imprisonment because "the information necessary to issue the summons ... was available *166 to the police officers on the beach walk when their identification was produced." Id. at 330, 555 A.2d 699. We said that the police did not "ha[ve] the right to detain plaintiffs beyond the time it took to obtain appropriate identification from them so a summons could issue." Id. at 330, 555 A.2d 699.
While Marion bears some superficial resemblance to the facts here, we find that decision inapposite. In Marion, plaintiffs were improperly arrested and brought to police headquarters. As we pointed out in our opinion in Marion, the police had no right to arrest the plaintiffs for violating a municipal ordinance absent "a breach of the peace." Ibid. (quoting N.J.S.A. 40A:14-152). By statute, the authority of the police was limited to detaining the plaintiffs at the place of the original encounter only for such time as was necessary to issue a summons. In contrast, here plaintiff was properly arrested for a simple assault that took place in the presence of the police officers, and was properly brought to police headquarters. It is true that under R. 3:3-1, once McDonald alleged that she had been stalked by plaintiff, the police should have referred the matter to a judicial officer for a probable cause determination and issuance of a summons. But no prejudice resulted from this dereliction. The record clearly indicates that an "on call" judge was telephoned and that bail was set immediately. Although plaintiff disputed this fact in her papers submitted in opposition to defendants' motion for summary judgment, she presented no contradictory evidence. See R. 4:46-2(b); Housel v. Theodoridis, 314 N.J.Super. 597, 604, 715 A.2d 1025 (App.Div.1998). The evidence on the subject "is so one-sided" that the fact must be accepted as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 213 (1986); see also Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 538, 666 A.2d 146 (1995). It must be assumed that when the matter was presented to the "on call" judge, he made the appropriate probable cause finding. See R. 3:4-1(b)(2). But even if he did not do so, defendants cannot be faulted. In any event, as we said in our discussion relating to plaintiff's section 1983 claim, probable cause for detaining plaintiff on the complaint charging stalking was apparent on the face of McDonald's sworn statement.
We are thus satisfied that plaintiff's claim for false imprisonment was properly dismissed.
Affirmed.