

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-2001

# Trabal v. Wells Fargo Armored

Precedential or Non-Precedential:

Docket 00-2511

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Trabal v. Wells Fargo Armored" (2001). *2001 Decisions.* Paper 240.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/240

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 16, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2511

LUIS TRABAL

v.

WELLS FARGO ARMORED SERVICE CORPORATION,
its successors and/or assigns;**
LOOMIS FARGO CORPORATION; JOHN DOES, 1-100,
the same being fictitious; ABC CORP.
(D.C. Civil No. 98-cv-00858)

JEROME Q. FORD

v.

WELLS FARGO ARMORED SERVICE CORPORATION, its
successors and/or assigns;** LOOMIS FARGO
CORPORATION; JOHN DOES 1-100, the same being
fictitious; ABC CORPORATION, the same being fictitious;
individually, jointly, severally, alternatively
(D.C. Civil No. 98-cv-02225)

Wells Fargo Armored Service Corporation,
its successor and/or assigns,**
Loomis Fargo & Co., John Does 1-100,
the same being fictitious, and ABC Corporation, 1-10,
the same being fictitious; individually, jointly,
severally, alternatively,

        Appellant

Appeal from the United States District Court
for the District of New Jersey
District Judge: Hon. Alfred M. Wolin
_____

** Deleted per Clerk's Order dated 1/10/01.

Argued: April 17, 2001

Before: BECKER, Chief Judge, McKEE, Circuit Judge
and POLLAK,*** District Judge

(Opinion filed: October 16, 2001)

       JOHN J. GIBBONS, ESQ. (Argued)
       KEVIN MCNULTY, ESQ.
       Gibbons, Del Deo, Dolan, Griffinger
        & Vecchione
       One Riverfront Plaza
       Newark, New Jersey 07102-5497
Attorneys for Appellant,
Wells Fargo Armored Service
Corporation

       HOWARD SIMS, ESQ. (Argued)
       Santoro and Santoro
       304 Maple Avenue
       P.O. Box 38
       South Plainfield, NJ 07080
Attorney for Appellee,
Luis Trabal

       JOSEPH CHARLES, JR., ESQ.
        (Argued)
       Ashley and Charles
       50 Park Place
       Suite 1400
       Newark, NJ 07102
Attorney for Appellee,
Jerome Q. Ford

_____

*** The Honorable Louis H. Pollak, District Judge, U.S. District Court for
the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

McKEE, Circuit Judge.

This appeal arises from a diversity action for malicious prosecution that Luis Trabal and Jerome Q. Ford brought against Wells Fargo Armored Service Corporation. The district court denied Wells Fargo's motion for summary judgment and sua sponte granted partial summary judgment to Trabal and Ford based upon the court's conclusion that defendant could not establish lack of probable cause to prosecute Trabal and Ford as a matter of law. The court thereafter entered judgment for Trabal and Ford based upon a jury verdict in their favor and against Wells Fargo. Wells Fargo appeals.

For the reasons that follow, we hold that the charges that Wells Fargo initiated against Trabal and Ford were supported by probable cause. Inasmuch as probable cause is the sine qua non element of the tort of malicious prosecution, we will reverse and remand to the district court with instructions to enter judgment for Wells Fargo.

I. Background Facts

This dispute centers around the disappearance of a First Fidelity Bank money bag containing $190,000. On June 16, 1993, Robert Emond checked the bag in question out of a Wells Fargo vault. He thereafter reported the bag missing when he and his partner, Luis Matias, arrived at First Fidelity later that same day.

William J. Cianci, Wells Fargo Security Loss Prevention Manager, initially focused on Emond and Matias as possible suspects in the investigation. Cianci fruitlessly checked Emond and Matias's credit histories and took statements from Emond, Matias, and employees in charge of the vault. Both Emond and Matias indicated that Emond was "fooling around" at the loading dock around the time the money bag disappeared.

On June 18, 1993, Carlos Rodriguez, another Wells Fargo employee, telephoned Cianci and reported that he had

3

observed the theft of the bag. On June 21, 1993, Rodriguez gave two sworn statements to Cianci in which Rodriguez related what purported to be his eyewitness account of the events on the morning in question. In those statements, Rodriguez stated that Emond had dropped his pants on the loading dock and, in the midst of his fooling around, Emond's cart broke loose and rolled across the floor. One First Fidelity Bank money bag dropped from the cart and Luis Trabal stopped the cart with his foot. Rodriguez said he then "saw Luis Trabal bend down and pick up a white FFB bag," "thr[o]w it into truck No. 701," and "kick the cart back to Emond." App. at 105–108. Truck No. 701 was assigned to Jerome Q. Ford and Jack D'Elia.

On June 21, 1993, Cianci interviewed Trabal, Ford, and D'Elia. Each of them denied any involvement with, or knowledge of, the missing money bag. Ford and D'Elia, did, however, admit that later during the day in question they had made an unauthorized and unlogged stop at D'Elia's home with their armored Truck No. 701.

On June 22, 1993, Cianci summoned Det. Sgt. Mileski of the Lynhurst police to the Wells Fargo facility and both men re-interviewed the employees. Trabal, D'Elia, and Ford again denied any involvement. Trabal and D'Elia gave written statements, and Ford invoked his Miranda rights and left the interview. Rodriguez refused to be interviewed, resigned from Wells Fargo, and left the facility. On his way out, he reconfirmed his account of the theft. In doing so, he informed Cianci that he was afraid to speak to the police because Burt Terrely,[1] a union representative monitoring the investigation, had threatened to "find the rat" who had implicated union employees. Cianci did not interview Terrely. Cianci later explained that decision as follows: "[i]t had no bearing on the case, you know, he's a union man and I just stayed away from the union." App. at 296. Cianci also did not interview the two other employees present at the alleged incident, namely Benny Pareja (Rodriguez's partner) and Brian Cenicola (Trabal's partner).

On June 24, 1993, Cianci filed a criminal complaint against Trabal, Ford, and D'Elia based primarily on

_____

1. The briefs also refer to him as "Turelli" and "Turrelli."

4

Rodriguez's statements. Trabal and Ford turned themselves in and spent two nights in custody before they posted bail on the third day.

Meanwhile, Cianci unsuccessfully tried to telephone Rodriguez. Cianci did eventually speak to Rodriguez by telephone, and Rodriguez agreed to resume cooperation with the investigation. Rodriguez subsequently gave statements to the Lynhurst police which described his reason for previously withdrawing his cooperation. In those statements, he reconfirmed the earlier statements he had given Cianci.

On June 29, 1993, Mileski interviewed Luis Matias (Emond's partner) and Brian Cenicola (Trabal's partner). Matias confirmed that the cart rolled away from Emond and that the missing bag was not on the cart when Matias subsequently loaded the truck. Cenicola confirmed that the cart rolled over to Trabal who stopped it with his foot. However, Cenicola maintained that he did not know what happened afterward.

On March, 16 1994, Cianci testified before the Bergen County grand jury, which thereafter indicted Trabal, Ford, and D'Elia for theft. However, three years later, the Bergen County Superior Court dismissed the charges based upon the voluntary application of the Assistant Prosecutor, James Addis. Addis had recently been assigned to the case, and he concluded that subsequent events seriously impaired Rodriguez's credibility. In 1996, Rodriguez had pled guilty to endangering the welfare of a minor. In addition, in late 1996, he made "odd comments" to Addis in which he stated that Emond "pulled down his pants" so that he could "urinat[e] into the air and catch it in his mouth." App. at 9, 34. His recollection of the events surrounding the "horse play" on the dock had not previously captured that little detail.

After the criminal charges were dismissed, Trabal and Ford brought separate suits against Wells Fargo. Both complaints alleged malicious prosecution, false arrest, wrongful termination of employment, negligence, and slander. With the exception of the tort of malicious prosecution, all counts of the complaints were dismissed by

5

motions and consent. Wells Fargo filed this appeal following the aforementioned jury verdict in favor of those plaintiffs for malicious prosecution.

II. Procedural History

Trabal and Ford initiated their tort actions in state court, but Wells Fargo thereafter removed them to the United States District Court for the District of New Jersey where the suits were consolidated. Both complaints alleged malicious prosecution, false arrest, wrongful termination of employment, negligence, and slander. All of those counts, except for the count claiming malicious prosecution, were dismissed by motion or consent.

Wells Fargo moved for summary judgment based upon its assertion that plaintiffs could not establish the requisite malice because Cianci had sufficient evidence to establish probable cause to institute criminal proceedings against Trabal and Ford as evidenced by the indictment returned by the grand jury. Trabal and Ford did not file cross-motions for summary judgment. Rather, they argued the existence of genuine issues of material fact. On February 29, 2000, without oral argument, the district court denied Wells Fargo's motion. It also granted partial summary judgment to Trabal and Ford sua sponte based upon the court's conclusion that Wells Fargo lacked probable cause to prosecute them. The court thereafter denied Wells Fargo's motion for reconsideration, and the matter proceeded to trial on the malicious prosecution counts.

At the conclusion of the evidence, the district court instructed the jury that two of the four elements of malicious prosecution were not disputed -- namely, that (a) Wells Fargo had instituted criminal proceedings against Trabal and Ford and (b) those proceedings had terminated in Trabal and Ford's favor. The district court further instructed the jury that the element of lack of probable cause had already been decided by the court as a matter of law. The court then charged that the jury could infer the remaining element of plaintiffs' cause of action, malice, from the lack of probable cause. The jury returned a verdict for the plaintiffs and awarded $825,000 compensatory damages and $1,000 punitive damages to each plaintiff.

6

The court denied Wells Fargo's timely motion for judgment as a matter of law under Fed. R. Civ. P. 50(b), and entered judgment against Wells Fargo in the amount of $1,652,000.2 Wells Fargo then filed a motion under Rule 50 and moved in the alternative for a remittitur of damage awards or for a new trial pursuant to Rule 59. The district court denied Wells Fargo's motions, and this appeal followed.

III. Discussion

Under New Jersey law, malicious prosecution has four elements. Plaintiff must establish that the defendant (1) instituted proceedings (2) without probable cause and (3) with legal malice; and (4) the proceedings terminated in favor of the plaintiff. Lightning Lube v. Witco Corp., 4 F.3d 1153, 1197 (3d Cir. 1993). Failure to prove any one of these four elements denies the plaintiff a cause of action. Fleming v. United Parcel Service, 604 A.2d 1029, 1030 (N.J. Super. Ct. App. Div. 1992), cert. denied, 516 U.S. 847 (1995). The district court correctly noted that the first and fourth elements were not contested. The court's pretrial ruling that defendant lacked probable cause led the court to instruct that the third element, malice, could be inferred. Accordingly, our inquiry boils down to determining whether Wells Fargo had sufficient evidence to constitute probable cause to initiate a criminal prosecution of the plaintiffs. If it did, there could be no malice, and the court therefore improperly denied Wells Fargo's motion for summary judgment. As noted above, the district court granted Trabal and Ford partial summary judgment on the issue of probable cause sua sponte.3 The court apparently

_____

2. Fed. R. Civ. P. 50(b) allows the trial court to enter judgment as a matter of law at the conclusion of a jury trial notwithstanding a jury verdict for the opposing party.

3. We have previously stated that a district court may not enter summary judgment against a party without affording that party notice and an opportunity to respond. In Chambers Development Co. v. Passaic County Utilities Authority, 62 F.3d 582 (3rd Cir. 1995), we stated:

Although authority has developed to allow a court to grant summary judgment to a non-moving party, a judgment cannot be

concluded that Rodriguez's eyewitness account lacked corroboration and Wells Fargo's investigation was incomplete and speculative. The court noted Wells Fargo's failure to investigate Rodriguez's credibility, check Trabal's and Ford's credit, and interview everyone who may have possessed relevant information.

We are now asked to review the district court's denial of Wells Fargo's Rule 50(b) motion following the jury's verdict for the plaintiffs.

A. Standard of Review

Our review of the district court's denial of a Rule 50(b) motion is plenary. "More particularly, a judgment notwithstanding the verdict may be granted under Fed. R. Civ. P. 50(b) `only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.' " Powell v. J.T. Posey Co., 766 F.2d 131, 133-4 (3d Cir. 1985). In reviewing the record, we must apply the same standard as the trial court in determining the propriety of a judgment n.o.v. Id. at 134.

Under New Jersey law, where the underlying facts in a malicious prosecution action are not disputed, the existence of probable cause is an issue of law. Lind v. Schmid, 337 A. 2d 365, 370 (N.J. 1975) ("Where the facts are undisputed, the existence or non-existence of probable cause is a question of law.") See also, Campione v. Adamar of New Jersey, 694 A. 2d 1045, 1056 (N.J. Super. 1997) (" `where the facts are not controverted the question of probable cause is one of law to be determined by the court, and its submission to the jury is improper.' ") Accordingly, we accord the district court's ruling as to probable cause plenary review.

_____

> entered without first placing the adversarial party on notice that the
> court is considering a sua sponte summary judgment motion. The court must also provide the party with an opportunity to present relevant evidence in opposition to that motion.

62 F.3d at 583, n.5 (citations omitted). However, inasmuch as we hold that the district court erred in not granting Wells Fargo's motion under Fed. R. Civ. P. 50, we need not discuss this procedural error.

8

B. Substantive Element of Probable Cause

As noted above, lack of probable cause is a sine qua non
of malicious prosecution. Campione, 694 A.2d at 1055 (N.J.
Super. Ct. App. Div. 1997) (citing Lind v. Schmid, 337 A.2d
365, 368 (N.J. 1975)).

> "probable cause" means reasonable grounds for
> suspicion supported by circumstances sufficiently
> strong in themselves to warrant an ordinarily cautious
> [person] in the belief that the accused is guilty of the
> offen[s]e with which he is charged.

Lind, 337 A.2d 365 at 369. The plaintiff in a malicious
prosecution action has the burden of proving that the
defendant lacked probable cause when he/she initiated
charges against the plaintiff. Id. at 368. The defendant does
not have to prove the existence of probable cause.

Here, the uncontested evidence establishes probable
cause for the prosecution Wells Fargo initiated against the
plaintiffs. When Cianci filed the criminal complaint, he
possessed sufficient evidence to reasonably believe that
Trabal and Ford were parties to the theft of the money bag.
Rodriguez gave two sworn statements that he saw Trabal
throw the money bag from Emond's cart onto Ford's truck.
This is consistent with, and confirmed by, the fact that
Ford and D'Elia independently admitted that they made an
unauthorized and unlogged stop with their armored truck
at D'Elia's house later that same day.

Rodriguez's sworn statement contains what he
represented as an eyewitness account of events
surrounding the disappearance of the missing money bag.
The fact that Rodriguez was later considered to be an
unreliable witness does not negate what Cianci knew when
he initiated charges against the plaintiffs on behalf of Wells
Fargo. The Supreme Court of New Jersey has held that
"[p]robable cause to arrest can be based on the statement
from a witness or informant." Wildoner v. Borough of
Ramsey, 744 A.2d 1146, 1154 (N.J. 2000). Rodriguez's
ensuing credibility problems go to his effectiveness as a
witness, and perhaps to his veracity, but not to what Cianci
reasonably believed after taking Rodriguez's statement and
referring the matter for criminal prosecution. Given Cianci's

9

information, it was reasonable for him to rely on Rodriguez's statements in filing the complaint.

Immediately after he refused to speak to the police, Rodriguez gave a credible explanation of his refusal and reconfirmed his consistent eyewitness account to Cianci. The court in Wildoner explained that the reliability of concerned citizens who report criminal activity is grounded on the assumption that the witness is being truthful, and is "heightened still further when the citizen provides the police with a sworn statement, thus subjecting himself or herself to potential civil or criminal liability." Id. at 1155 (quoting Sanducci v. City of Hoboken, 719 A.2d 160, 163 (N.J. Super. Ct. App. Div. 1998)). Rodriguez appeared to be just such a disinterested citizen who did "not expect any gain or concession in exchange for his information." Id. (quoting State v. Lakomy, 315 A.2d 46, 50 (N.J. Super. Ct. App. Div. 1974).

In State of New Jersey In the Interest of J.L.W. , the New Jersey Superior Court held that probable cause existed for filing a criminal complaint where one witness stated that the defendant fired a gun into an occupied home and another witness recanted his sworn statement regarding the defendant firing a gun into a different occupied home at a different occasion. 565 A.2d 1106, 1112 (N.J. Super. Ct. App. Div. 1989). Although the criminal complaint against J.L.W. was based solely on an oral statement and a recanted sworn statement of an unrelated incident, the court ruled that the similarity of the two uncorroborated accounts "mutually bolsters" their credibility and was sufficient to constitute probable cause. Id.

Ford and D'Elia's unauthorized stop with their armored truck strongly supports Rodriguez's account of the theft. Ford and D'Elia admitted making that stop and not entering it on their official log. That could only bolster Cianci's suspicions, and Rodriguez's statements. In addition, both Emond and Matias admitted that Emond was "horsing" around when they were initially interviewed by Cianci, and that added additional corroboration to Rodriguez's statement.

Trabal and Ford argue that Cianci was reckless in his investigation because he failed to investigate Rodriguez's

10

credibility, Trabal and Ford's credit records, or interview everyone who may have possessed relevant information. However, the law does not require that a prosecutor explore every potentially exculpatory lead before filing a criminal complaint or initiating a prosecution. "The reasonable belief which constitutes probable cause does not require[a complainant] to evaluate the totality of circumstances both inculpatory and exculpatory, as a trier of fact guided by a reasonable doubt standard." Carollo v. Supermarkets General Corp., 597 A.2d 1105, 1108–09 (N.J. Super. Ct. App. Div. 1991). "Probable cause does not depend on the state of the case in point of fact but upon the honest and reasonable belief of the party prosecuting," Martinez v. E.J. Korvette, 477 F.2d 1014, 1016 (3d Cir. 1973), and "[n]o more is demanded than a well-grounded suspicion or belief," J.L.W., 565 A.2d at 1112.

Moreover, even if such meticulousness was required, nothing on this record establishes that any of those steps would have exculpated Trabal and Ford. This is especially true given Rodriguez's statement and the aforementioned corroboration. Even assuming that the plaintiffs' credit history was impeccable, it would not have negated that evidence of their involvement with the missing money bag. In fact, the evidence of their guilt was sufficient to support a grand jury indictment. That indictment establishes probable cause by definition, and it does not evaporate simply because the prosecutor later decided that subsequent events compromised Rodriguez's value as a witness. As noted above, that was something that happened after Cianci initiated the prosecution of plaintiffs. Thus, "the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief[ ]' " for Trabal and Ford.Powell, 766 F.2d at 133-4.4

_____

4. Of course, we do not mean to suggest that Trabal and Ford were in any way involved in the disappearance of the money bag. That is not the issue before us, and we do not intend to imply anything about the guilt of either of these plaintiffs. Inasmuch as they have not been proven guilty, they remain innocent in the eyes of the law.

11

IV. Conclusion

For the foregoing reasons, we hold that the criminal complaint that Cianci initiated against Trabal and Ford on behalf of Wells Fargo was supported by probable cause. Thus, the plaintiffs here cannot establish the lack of probable cause and the malice necessary to their claim of malicious prosecution, and the district court should therefore have granted Wells Fargo's Rule 50(b) motion on that claim. Accordingly, we will remand this matter to the district court with instructions that it vacate the judgment previously entered for the plaintiffs, and instead enter judgment for Wells Fargo against Trabal and Ford.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit