**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5310-14T2

ANTHONY PACE, SR. and
DIANE PACE, his wife,

    Plaintiffs-Appellants,

v.

TOWNSHIP OF NUTLEY, TOWNSHIP
OF NUTLEY POLICE DEPARTMENT,
LT. KEVIN WATTS, and POLICE
OFFICER GERARD TUSA,

    Defendants-Respondents.

_____

Argued January 19, 2017 — Decided July 12, 2017

Before Judges Fuentes, Simonelli and Gooden
Brown.

On appeal from the Superior Court of New
Jersey, Law Division, Essex County, Docket No.
L-5518-13.

George M. Kachmar, III, argued the cause for
appellants.

Michael A. D'Anton argued the cause for
respondents (Chasan Leyner & Lamparello, PC,
attorneys; Mr. D'Anton, of counsel and on the
brief; Joseph E. Santanasto, on the brief).

PER CURIAM

Plaintiff Anthony Pace, Sr. (Pace Sr.), and his wife, plaintiff Diane Pace (Mrs. Pace), appeal from the May 29, 2015 Law Division order, which granted summary judgment to defendants Township of Nutley, Township of Nutley Police Department, Lieutenant Kevin Watts, and Police Officer Gerard Tusa, and dismissed the amended complaint with prejudice.[1] For the following reasons, we affirm.

I.

We derive the following facts from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)).

On October 18, 2012, plaintiffs and their two adult children, Diana Pace (Diana) and Anthony Pace, Jr. (Pace Jr.), were involved in a domestic dispute in their Nutley home that prompted Mrs. Pace to call 9-1-1. Mrs. Pace told the dispatcher that "[t]his time

---

[1] Plaintiffs also appealed from the July 10, 2015 order, which denied their motion for reconsideration. Because they did not address this issue on the merits, it is deemed waived. N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div.), certif. denied, 222 N.J. 17 (2015); Pressler & Verniero, Current N.J. Court Rules, comment 5 on R. 2:6-2 (2017).

it's for real[,]" and "we need another [police car] at [the house] because we're all f[**]king nuts." The dispatcher advised responding officers that "all family members were home," it "sounds like it's going good there[,]" and it was a "family dispute" with "assaults." Diana hung up the phone. Mrs. Pace called 9-1-1 again and told the dispatcher "[t]hat was my daughter that hung up on you. You might want to lock her ass up."

Prior to this incident, the Pace family had fifty-five interactions with the Nutley police. Twenty-five incidents involved domestic disputes, some of which resulted in temporary restraining orders against Pace Sr. and Jr., and others involved non-relatives obtaining restraining orders against Pace Jr. and Diana. Tusa, one of the officers responding to the Pace home on October 12, 2012, was familiar with all family members, having been involved in either an investigative or responsive capacity in several of those prior incidents.

When Tusa and Officer Carla Vitale arrived at the Pace home, Mrs. Pace was outside the home. She advised the officers that Pace Sr. was out of control inside the home. The officers entered the home to speak with Pace Sr., who was belligerent, refused to calm down, told them to leave, became increasingly louder, and refused to speak to them. Tusa and Vitale exited the home and

spoke again with Mrs. Pace, who said she wanted Pace Sr. out of the home and wanted to file a complaint against him.

When Watts arrived, Mrs. Pace advised him that Pace Sr. was out of control. The scene was chaotic with Pace Sr. and Jr. yelling and cursing from inside the home so loudly that it disturbed the neighbors. According to Tusa, Pace Sr. and Jr. were in such a rage that "spit was flying from their mouths." Watts requested additional police assistance, and other officers eventually arrived.

Watts approached the home and told Pace Sr. and Jr. that he had to come inside to investigate what was occurring and resolve it. When the front door opened, Pace Jr. was standing in the doorway with Pace Sr. behind him. As Watts stepped forward, Pace Jr. raised his hand and pushed Watts back and Pace Sr. moved forward in a menacing fashion and reached over Pace Jr.'s shoulder to push Watts, but did not touch him. Watts pepper-sprayed both men in the face.

Tusa removed Pace Jr. from the house. Pace Jr. resisted arrest, but was eventually handcuffed. Watts, Tusa, and two other officers went inside the home and attempted to handcuff Pace Sr. but he resisted, throwing punches and disobeying verbal commands. He was eventually handcuffed and removed from the home. He and Pace Jr. were charged with obstructing administration of law or

4

other governmental function, <u>N.J.S.A.</u> 2C:29-1(b), and resisting arrest, <u>N.J.S.A.</u> 2C:29-2(a). Pace Sr. pled guilty to improper behavior, and Pace Jr. pled guilty to resisting arrest.

Pace Sr. filed a complaint against defendants, alleging, in part, that the use of pepper spray constituted excessive force. Plaintiffs asserted claims of negligent hiring and supervision; violations of the New Jersey Civil Rights Act (CRA), <u>N.J.S.A.</u> 10:6-1 to -2; and battery.[2] His liability expert on police procedures opined that Watts' decision to use force to enter the house was extreme; there were no exigent circumstances warranting the second forcible entry into the home; and Watts should have warned Pace Sr. and Jr. that he was going to use pepper spray. The expert admitted, however, that a police officer is authorized to arrest anyone who touches the officer.

Following the completion of discovery, defendants filed a motion for summary judgment. In granting the motion, the motion judge found, based on a totality of the circumstances, that the police were justified in applying force to effectuate Pace Sr.'s arrest and prevent a tense situation from potentially escalating, and the use of pepper spray was not excessive. The judge found there was probable cause to arrest Pace Sr. under the Prevention

---

[2] Mrs. Pace asserted a per quod claim.

of Domestic Violence Act (PDVA), <u>N.J.S.A.</u> 2C:25-17 to -35, and there were exigent circumstances to enter the home based on Mrs. Pace's statement that Pace Sr. was out of control and she wanted him removed from the home, and because Diana was unaccounted for. The judge also found that entry into the home complied with the emergency aid doctrine, which permitted the officers to enter the house and ascertain Diana's safety. The judge concluded that defendants were entitled to qualified immunity and to specific immunity under the PDVA, and the officers were properly trained and supervised.

On appeal, plaintiffs contend that the judge erred in finding defendants were entitled to qualified and/or specific immunity and that the use of pepper spray did not constitute excessive force.[3] We disagree.

---

[3] We decline to address plaintiffs' argument that the judge failed to exclude inadmissible evidence, specifically, the audiotape recording and transcript of the 9-1-1 call and the Pace family's prior incidents with the police. Plaintiffs did not raise this argument before the motion judge and it is not jurisdictional in nature nor does it substantially implicate the public interest. <u>Zaman v. Felton</u>, 219 <u>N.J.</u> 199, 226-27 (2014) (citation omitted). In addition, because our review is de novo, we decline to address plaintiffs' argument that the judge made erroneous factual findings. <u>See</u> <u>In re Phillips</u>, 117 <u>N.J.</u> 567, 578 (1990) (holding that "[i]n a de novo proceeding, a reviewing court does not use an 'abuse of discretion' standard, but makes its own findings of fact").

A-5310-14T2

We review a ruling on summary judgment de novo, applying the same standard governing the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). Thus, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 406 (citation omitted). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We review issues of law de novo and accord no deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). Applying these standards, we discern no reason to reverse the grant of summary judgment.

## II.

In Point C. of their merits brief, Pace Sr. contends that defendants are not entitled to qualified immunity. He argues, in part, that the second warrantless entry into his home and use of excessive force by inappropriate use of pepper spray to gain entry satisfied the second prong of Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272, 281 (2001), which requires proof that a statutory or constitutional right was clearly

established.  However, he does not argue that the police lacked probable cause to arrest him.

"The doctrine of qualified immunity operates to shield 'government officials performing discretionary functions generally . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Morillo v. Torres, 222 N.J. 104, 116 (2015) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 410 (1982)).  "The well-established defense of qualified immunity interposes a significant hurdle for plaintiffs seeking to recover for asserted violations of civil rights at the hands of law-enforcement officials."  Ibid. (citation omitted).

"In New Jersey, the qualified-immunity doctrine is applied, in accordance with the Harlow pronouncement, to civil rights claims brought against law enforcement officials engaged in their discretionary functions, including arresting or charging an individual based on probable cause to believe that a criminal offense has occurred."  Id. at 117 (emphasis added) (citations omitted).  "Whether a police officer is entitled to qualified immunity is determined by application of a two-prong test."  Ibid. (citation omitted). "The first inquiry asks whether the facts alleged, '[t]aken in the light most favorable to the party

asserting the injury,' show that the challenged conduct violated a statutory or constitutional right.  Second, the court must determine 'whether the right was clearly established.'"  Id. at 117-18 (citing Saucier, supra, 533 U.S. at 201, 121 S. Ct. at 2156, 150 L. Ed. 2d at 281; Wood v. Moss, ___ U.S. ___, ___, 134 S. Ct. 2056, 2067, 188 L. Ed. 2d 1039, 1051 (2014)).

"The dispositive point in determining whether a right is clearly established is whether a reasonable officer in the same situation clearly would understand that his actions were unlawful."  Id. at 118 (citing Saucier, supra, 533 U.S. at 202, 121 S. Ct. at 2156, 150 L. Ed. 2d at 282).  "In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate."  Ibid. (quoting Plumhoff v. Rickard, ___ U.S. ___, ___, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056, 1069 (2014)).

The qualified immunity doctrine "protects all officers but the plainly incompetent or those who knowingly violate the law."  Ibid. (quoting Connor v. Powell, 162 N.J. 397, 409 (2000)).  "Law enforcement officers are not entitled to immunity 'if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'"  Ibid. (quoting Wildoner v. Borough of Ramsey, 162 N.J. 375, 386 (2000)).

"Thus, when a plaintiff asserts that he or she was unlawfully arrested, a law enforcement officer can defend such a claim 'by establishing either that he or she <u>acted with probable cause</u>, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence.'" <u>Id.</u> at 188-19 (emphasis added) (quoting <u>Kirk v. City of Newark</u>, 109 <u>N.J.</u> 173, 184 (1998)). "If officers of reasonable competence could disagree on the issue of probable cause, the doctrine of qualified immunity should be applied." <u>Id.</u> at 119 (quoting <u>Connor</u>, <u>supra</u>, 162 <u>N.J.</u> at 409).

"Procedurally, the issue of qualified immunity is one that ordinarily should be decided well before trial, and a summary judgment motion is an appropriate vehicle for deciding that threshold question of immunity when raised. The issue is one for the court to determine." <u>Ibid.</u> (citation omitted). "That said, if 'historical or foundational facts' that are material to deciding that issue are disputed, 'the jury should decide those . . . facts on special interrogatories'; but, the jury's role is limited to 'the who-what-when-where-why type of' fact issues." <u>Ibid.</u> (quoting <u>Schneider v. Simonini</u>, 163 <u>N.J.</u> 336, 355-56 (2000), <u>cert. denied</u>, 531 <u>U.S.</u> 1146, 121 <u>S. Ct.</u> 1083, 148 <u>L. Ed.</u> 2d 959 (2001)). "However, the jury does not decide the issue of immunity." <u>Ibid.</u> "When no material historical or foundational facts are in dispute

. . . 'the trial judge must then decide the legal issue of whether probable cause existed and, if not, whether a reasonable police official could have believed in its existence.'" Ibid. (quoting Schneider, supra, 163 N.J. at 360). Contrary to plaintiffs' argument, there were no material historical or foundational facts in dispute.[4] Thus, the matter was ripe for summary judgment.

Plaintiffs do not argue, and their expert did not opine, that the police lacked probable cause to arrest Pace Sr. We are nevertheless compelled to address this issue because of its importance in our analysis.

"Probable cause exists if at the time of the arrest 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Wildoner, supra, 162 N.J. at 389 (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 225, 13 L. Ed. 2d 142, 145 (1964)).

---

[4] Plaintiffs rely entirely on Santini v. Fuentes, 795 F.3d 410 (2015) to argue that qualified immunity cannot be decided on a motion for summary judgment where there are material facts in dispute. Even if there were factual disputes, we are not bound by published federal circuit court opinions. See Ryan, supra, 186 N.J. at 436; Pressler & Verniero, N.J. Court Rules, comment 3.5 to R. 1:36-3 (2017).

"Although it eludes precise definition, probable cause 'is not a technical concept but rather one having to do with the factual and practical considerations of every day life upon which reasonable men, not constitutional lawyers, act.'" Id. at 389-90 (quoting State v. Waltz, 61 N.J. 83, 87 (1972)). "Thus, 'the common and specialized experience and work-a-day knowledge of police [officers] must be taken into account.'" Id. at 390 (quoting State v. Contursi, 44 N.J. 422, 431 (1965)). "Moreover, '[a]bstract contemplation will not suffice because the decisions of police officers must be made on the spur of the moment and cannot be viewed fairly from the vantage point of twenty-twenty hindsight.'" Ibid. (quoting Sanducci v. City of Hoboken, 315 N.J. Super. 475, 481 (1998)). "The answer must instead be found 'in the tumult of the streets.'" Ibid. (quoting Sanducci, supra, 315 N.J. Super. at 481).

Here, the police had probable cause to arrest Pace Sr. for obstructing administration of law or other governmental function and resisting arrest and to enter the home to effectuate the arrest. A person is guilty of obstruction if he "obstructs the detection or investigation of a crime or the prosecution of a person for a crime." N.J.S.A. 2C:29-1(b). The police were attempting to investigate an alleged domestic violence incident

and arrested Pace Sr. based on what they believed to be his commission of the offense of obstruction.

A person is guilty of resisting arrest "if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest." N.J.S.A. 2C:29-2(a). Pace Sr. threw punches and disobeyed verbal commands as the police were attempting to arrest him. Thus, even viewing the facts in the light most favorable to Pace Sr., the low threshold of probable cause existed for the police to find he committed the offenses of obstruction and resisting arrest. Accordingly, because there was probable cause to arrest Pace Sr. and enter the home to effectuate the arrest, defendants are entitled to qualified immunity.

### III.

Plaintiffs contend in Point D. that defendants are not entitled to specific immunity because the incident was not a domestic violence incident. This contention lacks merit.

The PDVA "broadened the discretion of a police officer to arrest an alleged perpetrator, even when the victim did not corroborate the incident, provided that the officer had probable cause to believe the incident occurred." Wildoner, supra, 162 N.J. at 388 (citing N.J.S.A. 2C:21(b)). Thus,

> [t]o ensure protection for law enforcement officers and others who in good faith report a possible incident of domestic violence, the

13

Legislature enacted N.J.S.A. 2C:25-22, which provides:

> A law enforcement officer or a member of a domestic crisis team or any person who, in good faith, reports a possible incident of domestic violence to the police shall not be held liable in any civil action brought by any party for an arrest based on probable cause, enforcement in good faith of a court order, or any other act or omission in good faith under this act.
>
> [Id. at 389 (emphasis added) (quoting N.J.S.A. 2C:25-22).]

"[T]he central issue . . . is whether there was probable cause, or, alternatively, whether it was objectively reasonable for the officers to believe that probable cause existed at the time of plaintiff's arrest." Ibid.

"A law enforcement officer may arrest a person . . . where there is probable cause to believe an act of domestic violence has been committed[.]" N.J.S.A. 2C:25-21(b). Harassment is a predicate act of domestic violence under the PDVA. N.J.S.A. 2C:25-19(a)(13). A person commits the offense "if, with purpose to harass another, he . . . [m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm" or "[e]ngages in

14

any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(a), (c).

The police were called to the Pace home on a report of a domestic dispute. When they arrived, they were confronted with a chaotic and volatile situation, with Pace Sr. screaming and cursing from inside the home. Mrs. Pace was outside the home and told the officers that Pace Sr. was out of control inside the home, she wanted him removed, and she wanted to file a complaint against him. Again, even viewing the facts in the light most favorable to Pace Sr., the low threshold of probable cause existed for the police to find Pace Sr. committed the offenses of harassment. Accordingly, defendants are entitled to specific immunity.

## IV.

For the sake of completeness, we address whether employing pepper spray constituted excessive force. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a seizure occurred and that it was unreasonable." Leopardi v. Twp. of Maple Shade, 363 N.J. Super. 313, 330 (App. Div. 2003) (quoting Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999)). "Qualified immunity operates 'to protect officers from the sometimes hazy border between excessive and acceptable force.'" Ibid. (quoting Saucier, supra, 533 U.S.

at 206, 121 S. Ct. at 2151, 159 L. Ed. 2d at 284. "The 'test of reasonableness under the Fourth Amendment is whether, under the totality of the circumstances, the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" Ibid. (quoting Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003)).

Courts consider the following factors in making this "totality of the circumstances" analysis:

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight, as well as the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.
>
> [Id. at 330-31 (quoting Estate of Smith, supra, 318 F.3d at 515.]

"Nevertheless, '[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" Id.

at 331 (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443, 455 (1989)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Ibid. (quoting Graham, supra, 490 U.S. at 397, 109 S. Ct. at 1872, 104 L. Ed. 2d at 455-56).

Plaintiffs have cited no authority supporting their argument that the use of pepper spray constitutes excessive force. We find that under the totality of the circumstances, and especially where a police officer was attacked, the use of pepper spray was objectively reasonable in light of the facts and circumstances confronting the officers.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-5310-14T2